CASE 37—PETITION EQUITY—FEBRUARY 28.

# E. C. Dunlap vs. Shreve's ex'rs.

APPEAL FROM LOUISVILLE CHANCERY COURT.

A testator, who died childless, gave, by his will, two sevenths of his residual estate to "the *children* of Mrs. Catherine Boyce, my deceased sister—her granddaughter, Mrs. Dunlap, wife of Col. H. C. Dunlap, to take the share which her father, Wm. Boyce, would take, if living." Three of Mrs. B.'s children were living at the time the will was published; two others had died before the publication —William, leaving an only child, the grand-daughter mentioned in the will; and Martha, also leaving an only child, the plaintiff, who claims, under the will, the share that her mother would have taken if living. *Held*—That she is entitled to such share, and that the word *"children"* was used synonymously with the words "issue," "heirs," or "descendants." (1 *Ves., sr.*, 196; *Ambler*, 691; 4 *Ves.*, 497.)

J. G. WILSON, for appellant, cited 3 *Stat. Law*, 400; *Rev. Stat.*, sec. 1, art. 2, *ch.* 46; *Ibid*, sec. 18, *ch.* 106; 10 *B. Mon.*, 172; 1 *Met.*, 300; 3 *Met.*, 339.

J. W. BARR on same side.

G. A. & I. CALDWELL, for appellees, cited 2 *Met.*, 469; 4 *Met.*, 339.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

The appellant, an infant and only child of Martha Dunlap, who was one of five children of Catherine Boyce, brought this suit in equity against the appellees as executors of *L. L. Shreve*, asserting a claim as devisee of a portion of a large estate disposed of by his will. The chancellor having dismissed her petition, this appeal presents that judgment for revision.

The testator died childless, but left collateral kindred of different degrees of propinquity, among most of whom, *and also strangers*, he distributed his estate. The mother of the appellant, who was his sister, had died, leaving five children, two of whom, William and Martha, had also died before the publication of the will—William leaving an only child, *Belle* Dunlap; and Martha leaving an only child, the infant appellant, then about ten years old.

The provision of the will, under which the appellant claims, disposes of a large residual estate in the following manner, so far as she is concerned: "Two sevenths thereof to Mrs. Ann Martin, my half sister, and two sevenths thereof to the children of Mrs. Catherine Boyce, my deceased sister—her granddaughter, Mrs. Dunlap, wife of Col. H. C. Dunlap, to take the share which her father, William Boyce, would take, if living."

*It does not appear that the testator knew that his neice, Martha, had left an infant child who was still living.*

The counsel for the appellant relies, for the maintenance of her claim, on the constructive intention of the testator, as well as on the object and legal effect of the following statutory provisions:

"When a devise is made to several as a class, or as tenants in common, or joint tenants, and one or more of the devisees shall die before the testator, and another, or others, shall survive the testator, the share or shares of such as so die shall go to his or their *descendants*, if any; if none, to the surviving devisees, unless a different disposition is made by the devisor." (*1st Stant. Rev. Stat., pp.* 1–2.)

"If a devisee or legatee dies before the testator, or *is dead at the making of the will*, leaving *issue*, who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will." (*Ibid, p.* 461.)

The counsel for the appellees insist that his mother, being dead at the time of publication, the appellant was not one of the class of devisees contemplated by the statute concerning

legatees or devisees as a class—and also denies that the will indicates any intention to include her in the testamentary class.   And this is the problem to be solved by this court.

The evident object of the enactment first quoted was to prevent the survivorship, and of the last, the lapse of the common law—and of both to make a radical change, deemed more consonant with the general intention of testators.

The common law doctrine of survivorship, in cases of bequests to joint tenants, or to a plurality of legatees, as a class, and also of lapsed legacies to sole legatees, was, in most cases, inconsistent with the presumed purpose of the testator, whenever the deceased beneficiary left a descendant or descendants to whom the law would transmit the legacy if once effectuated in the decedent.   To provide for a father or mother is to provide for their children.   A father of several children, one of whom had died, leaving a child, would, without some peculiar reason to the contrary, give to the orphan descendant what he would have given to the parent, if surviving.   And, generally, a testator should be presumed to intend that if, in his lifetime, any one of his legatees shall die, leaving a child, that child shall succeed to the legacy.   Recognizing the truth and justice of this obvious consideration, the Legislature of Kentucky enacted the reform contemplated by the statutes we have herein quoted.   And a liberal construction should secure reasonable equality and effectuate the presumed intent of the Legislature and of testamentary donors, in all cases within the scope of the legislative object.

There can be no doubt that, had her mother been living when the will was published, the appellant would have been her statutory substitute.   But the appellees argue that her mother, then being dead, the appellant was not a legatee embraced by either the letter or the spirit of the statute.

As the term " children " designates " a class," the question on the statute is, whether, nothing appearing to the contrary, the testator meant only the three children living when he published his will, or intended the *issue or descendants* of Catherine Boyce.   Had her two deceased children been then believed by the testator to be alive, or had he not known that

they were dead, his simple devise to her children would undoubtedly have included them; and then, beyond question, the statute would have substituted their children as devisees. And if the testator intended to confine his bounty to a portion of his said sister's descendants, and to exclude the appellant, why did he not name the three children intended, as well as the child of one of the two-dead children? Or why did he not say "to Catherine Boyce's *living* children?" Such a provision would have been much more appropriate and certain. The parenthetical allusion to the grandchild, *Belle Dunlap*, may be rationally understood as illustrative of the *character* of the devisees as *issue*, rather than as expressly legatory. And on this hypothesis, it strengthens rather than weakens the presumption, that, by "children," the testator meant issue or descendants. And the comprehensive and innovating provisions of the statute rather imply that the Legislature intended that a simple devise to such a class should, *prima facie*, be so interpreted. Any other implication would often frustrate the equitable purpose and conflict with the reason of the statute. For surely the appellant is as much within the range of that purpose and reason as she would have been had her mother died between the date of the will and the death of the testator, and especially as the will spoke at the time of the testator's death, and not before, and was, until then, revocable or amendable. Nor does even the letter of the statute against survivorship necessarily import that the death of one of a class of devisees must occur before the date of the will. "Shall die *before* the testator," may mean as well a death before as after publication. And this interpretation is fortified by the express declaration of the statute against lapses—that death, either before or after publication, shall prevent a lapse, and entitle the "issue" of the dead legatee to the legacy. These two kindred and simultaneous enactments should be considered in *pari materia*, and construed in juxtaposition as one entire expression of the legislative intent, and should, therefore, be read thus: "If a devisee or legatee dies before the testator, or is dead at

the making of the will, leaving *issue* who survive the testator, such *issue* shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator." "When a devise is made to several *as a class*, or as tenants in common or joint tenants, and one or more of the devisees shall die before the testator, and another or others shall survive the testator, the share or shares of such as so die shall go to his or their *descendants*, if any; if none, to the surviving devisees."

Does not this rather imply that, in a devise to unnamed children *as a class*, the statute shall apply to a death of one of them before as well as after publication; and does it not, altogether, consistently import that, *prima facie*, such a devise should be understood, *per se*, as intended for the entire stock of descendants, including not only the children living at the publication, but also the representatives of such child or children as were then dead—all to take *per capita* or *per stirpes*, as the statute law declares they should do had there been no will, or had their common parent been entitled to the legacy and had died intestate? The devise to C. Boyce's children, as a class, may well mean her whole stock—all she ever had. The motive of the devise to the "children" of the testator's sister, Catherine, was his affection for *her*, and his felt duty or desire to provide for her surviving *posterity* what he would have given to her had she herself been living. And would not that motive have applied to all her descendants just as the law would have applied to them had *she* been the devisee, and had afterwards died intestate? And do not the reason and justice of the statute likewise apply in the same way and to the same extent?

According to the common law, a simple devise to children would technically include only such of that class as were living at the time of publication. But *a slight circumstance, intrinsic or extrinsic*, might have extended the construction to issue or descendants. And it seems to us that the liberal and comprehensive purpose of our Legislature was to make a radical and thorough change in the common law, as to lapses and survivorships; and, consequently, a correspondent change

in the stringent construction of devises to children as a class, so as more certainly to effectuate equal justice and the actual intention of testators. Why else does the statute against lapses use the term "issue?" And why else does the statute against the survivorship of the common law use the word "descendants?"

The plain object of the legislative innovation, and the presumable intention of testators, and the spirit of the two legislative declarations, make no distinction between a death before or after publication? It is true, that a devise to only one identified person implies that the testator believes that the devisee was still living. But the presumption is strong that a knowledge of the death would have had no other effect than to change the devise to the issue or descendants in whose favor the testamentary motive may be generally presumed equally to apply. Consequently, within the purview, and consistently with the pervading spirit of the two statutes, there may be no sufficient reason for distinguishing between them as to the time of the death.

But another enactment provides, that "a devise to children *embraces* grandchildren when there are no children." This is declaratory, affirmative, and peremptory. It declares the common law doctrine and peremptorily affirms that, when there are no children, a devise to children, as a class, *must necessarily* embrace grandchildren. But it does not say, that, when there are both living children and issue also of dead children, a simple devise to *unnamed children, as a class,* shall never embrace the issue or descendants of the dead children; *and any such construction would conflict with the animating spirit and practical purpose of our statutory law on the subject of lapse and survivorship; and also with the spirit of a will indicating that the testator meant all the descendants of dead children.* This enactment, therefore, does not materially affect the construction of either of the other two enactments.

Then, carefully considering the reason and object of these two enactments against lapse and survivorship when there may be "issue" or "descendants," and allowing a liberal and consistent interpretation of the letter of that against survivor-

ship, we are strongly inclined to the conclusion, that, to give full effect to the legislative purpose, a devise to "children," as a class, unqualified by the context or by any extraneous fact, should here now be construed as a devise to issue, heirs, or descendants. And on this hypothesis the common law rule of construction should be inverted so as to require some other proof that, by "children," the testator intended the devise for such only as were living when he published his will.

And this construction would make the appellant a devisee in her mother's place. This, however, we need not decide definitively, as there is another ground for adjudging her claim good and available.

Whatever, in this respect, may be the final and authoritative exposition of the statutes, we are satisfied, from the spirit and context of the will in this case, that the testator used the phrase, " *Catherine Boyce's children*," synonymously with her issue, heirs, or descendants—and this, even at common law, is sufficient to make the appellant a devisee. *Wythe vs. Blackman*, 1st *Vesey*, sr., 196; *Gayle vs. Rennet, Ambler*, 691; *Rayle vs. Hamilton*, 4th *Vesey*, 437—and many other cases adjudged in England and America, establish this exception from the common law import of the isolated testamentary term "*children*."

In the will in this case children, heirs, and descendants, are used synonymously in the following instances:

1. In a devise to Thomas Steel, in trust for " his wife and *children*," the testator provides that, at the death of the trustee and his wife, the trust estate shall " pass to their children *or descendants* in the same manner that the same would pass to them by descent if he (the trustee) owned the same in fee."

2. In a devise to *Charles Petit*, in trust for the benefit of " his wife and *children*," the testator provides that, at the death of the trustee and his wife, the trust estate shall go to her " *heirs* at law."

We are authorized, therefore, to conclude that, in the clause under which the appellant claims, the testator used the word " children " in the same sense of " heirs " or " descendants,"

in which he employed the same term in the foregoing in-stances.

And this conclusion, from the face of the will, is fortified by the following auxiliary considerations:

1. In a devise to the "children" of his brother *Thomas*, the testator identifies the particular devises by their individual names. But in this case the devise is to "children" only as a class, and the intended recipients not individualized by name or otherwise. This implies, that, when the testator intended living children only, he named them.

2. The proximity of the appellant was as near to the testator as that of several of his devisees, and nearer than that of several others. And we may presume that she was as meritorious as any of them, and, for her education and maintenance, needed his bounty more than most of them. She even represented his deceased sister, not only in blood, but in the same name of "*Catherine*." Then why, without any intimated or imaginable motive, should he have invidiously discriminated between her and all others, and emphasized a *peculiar* repugnance to her, or indifference to her welfare, by an intentional pretermission of her in his will, distributing so lavishly a vast estate among collateral kindred and strangers? He cannot, consistently, be presumed to have so intended. And, consequently, he must be presumed to have used "Catherine Boyce's children" as synonymous with her descendants, as in other portions of his will, and to have thought that the statute against survivorship would so operate. And we are also satisfied that his oblique allusion to Belle Dunlap was intended only to illustrate that meaning of the word children, and to show that she, being a descendant, was included in the devise to "children," according to his intention, as manifested in two other clauses of his will, to include descendants of dead children, when he made a devise or bequest simply to "children;" and as he had, by his express allusion to *Belle Dunlap*, the only child of a deceased son of his sister Catherine, shown that he meant, by said Catherine's "children," those living and the issue of such also as were dead, to take, according to the statute of distribu-

tions, the portions devised to their deceased parents, he either did not know that the appellant was living, or, if he did, he thought it superfluous to repeat the same idea by naming her in the same way, and for the same purpose, already sufficiently indicated.

This court, Judge *Williams* dissenting, is, therefore, satisfied that, according to the spirit and context of his will, and the most consistent interpretation of the legatory clause under which the appellant claims, fortified by the object of the statutory provisions we have quoted, the testator intended, by "children" *unnamed*, issue or descendants of the dead parents—and we therefore conclude that the appellant is a legatee, entitled to her mother's portion as her only child— just as she would have been had her mother survived the testator and afterwards died.

Wherefore, the judgment dismissing her petition is reversed, and the cause remanded, with instructions to decree to the appellant one fifth part of the estate devised to the children of Catherine Boyce.

---

JUDGE WILLIAMS, DISSENTING FROM THE MAJORITY OF THE COURT, DELIVERED THE FOLLOWING OPINION:

The testator, among others, made the following devise: " I give  *  *  * two sevenths thereof to Mrs. Ann Martin, my half sister, and two sevenths thereof to the *children* of Mrs. Catherine Boyce, my deceased sister—*her granddaughter, Mrs. Dunlap, wife of Col. H. C. Dunlap, to take the share which her father, Wm. Boyce, deceased, would take if living.*"

There were *three living children* of Mrs. Boyce *at the time of making the will;* her son, Wm. Boyce, father of Mrs. Dunlap, was then dead; and also her daughter, Martha Dunlap, the mother of the minor plaintiff, and former wife of Col. H. C. Dunlap.

The plaintiff insists that her deceased mother was one of the " *class* " designated by the testator as " the children of Mrs. Boyce;" and, though dead at the making of the will, that, as issue of her deceased mother, surviving the testator, she is

## WINTER TERM, 1865.     343

E. C. Dunlap vs. Shreve's ex'rs.

entitled to the bequest so made to her mother. This is denied by the executors, and issue thereon is made.

This is a most vital question to plaintiff, upon the solution of which depends her entire rights under this will.

The question has been decided by this court in Sheets *et als.* vs. Grubbs' executor (4 *Met.*, 341). But we are now asked to review and overrule this case, as plaintiff's counsel concedes that it is decisive of her rights, if permitted to stand.

This question depends on the construction to be given to two sections of the Revised Statutes. Section 1, article 2, chapter 46 (2 *Stant. Rev. Stat.*, 1, title "*Heirs and Devisees*"), provides that:

" *When* a devise is *made* to *several* as a *class* * * and one or more of the devisees *shall die before the testator,* and another or others shall survive the testator, *the share* or *shares* of *such as so die* shall go to his or their descendants, if any; if none, to the surviving devisees, unless a different disposition is made by the devisor. A devise to *children* embraces *grandchildren* when there are *no children;* and no other *construction* will give effect to the devise.

Section 18, chapter 106 (2 *Stanton's Rev. Stat.*, 461, title "*Wills*"), enacts that—

"If a *devisee* or *legatee* dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will."

It will be perceived that, under these different sections, it is all *essential* to plaintiff's recovery that she establish that her mother be a *legatee;* for if she was a legatee, plaintiff can recover, though her mother was dead at the making of the will. But if *she be not a legatee,* then plaintiff cannot take as her *descendant* or *issue;* but, if she takes at all, it must be because she herself is a legatee.

Then what is the meaning of the language, and what is the object of this statute? " *When a devise is made to several as a class,*" means precisely that *if, at the time of making a will,*

*a devise is made to several living persons as a class*, " and one or more of the devisees *shall die before the testator*, the share of such as die shall go to his or their descendants."

But if a child be dead at the making of a will, and it be not named, and there be surviving children, how shall a devise to children include such dead child?

The devise in Shreve's will is to the children of Mrs. Catherine Boyce. At the date of the will, two of Mrs. Boyce's children were dead, and three surviving. Were there three or five devisees included by such designation?

This court has virtually decided this question at its present term, in Renaker vs. Lemon (1 *Duvall*, 212), opinion by Judge Robertson. In this case Lemon devised his property to his *children as a class.* After the publication of the will, but before testator's decease, three of the children died, and their descendants claimed the shares which their respective parents would have taken had they survived, and, in construing this section 1, article 2, chapter 46, this court says:

" The *sole object* of this enactment was to prevent the survivorship of the common law; and *such only* is its legal effect. Notwithstanding its provisions, a several devise or legacy to one lapsed into the testator's estate by the intervening death of the beneficiary, until a subsequent enactment in the Revised Statutes on Wills, chapter 106, section 18."

And this is a true interpretation. The sole object was to prevent the survivorship where a legatee, being one of a class, should die between the publication of the will and testator's death, and not by any means to determine who should be legatees, nor to enlarge the meaning of the term children, or alter the long and uniformly established rule of construction that the term children signified and embraced only such children as were living at the publication of the will, and not those then dead.

The sole object of this section was to prevent the survivorship of the common law. The object of section 18, chapter 106, was to prevent the lapse of the common law.

It cannot be necessary to construe this as a devise to the dead children to give it effect, because there were living chil-

dren to take it; nor is it necessary, for the same reason, to construe it as embracing grandchildren in the term children; nor should courts give the language of this statute an unnatural construction, by which the surviving children of Mrs. Boyce will be deprived of a portion of their legacy to meet what might be regarded as a hard case.

Then, if Mrs. Dunlap, plaintiff's deceased mother, was not a child of Mrs. Boyce, in existence at the publication of the will, she was not a legatee; consequently, plaintiff cannot take as her descendant under said section 1, article 2, chapter 46.

Section 18, chapter 106, gives her no aid, because it is intended to prevent a lapse where a sole or several legatee, by name or designation, is dead at the making of the will, or shall afterwards die before testator's decease.

Should a testator devise, by name or other designation, to a person dead at the publication of his will, this still shows that he intended such person should partake of his bounty, but was ignorant of the decease; and it is but fair to presume, had the testator known of the decease of the object of such bounty, he would have given the bounty to the issue of such deceased person.

The last paragraph of said section 1 (2 *Stant. Rev. Stat.*, 1) clearly indicates the legislative construction and intention, and is conclusive upon this court. When the Legislature declares the term children shall include grandchildren when there are no children, and no other construction will give effect to the will, this is tantamount to saying, but if there are children who can take, and effect can be given to the will without including grandchildren in the term children, they shall not be included, and this for the very potent reason, that, as the sole object of this statute is to prevent the survivorship of the common law, it is not necessary in such case to construe the term children to include grandchildren.

If this construction be correct, it is plain that plaintiff cannot claim as a descendant of her deceased mother, because her mother was not a legatee; she cannot claim as a legatee herself, because she, being a grandchild, is not embraced in

the term children, there being at the publication of the will surviving children of Mrs. Boyce.

And that such was the understanding and intention of the testator, is to be presumed from the fact, that, immediately after making the devise to the children of Mrs. Boyce, he adds: "Her granddaughter, Mrs. Dunlap, wife of Col. H. C. Dunlap, to take the share which her father, Wm. Boyce, deceased, would take, if living." This, although "*parenthetical*," is a bequest, the words are legatory, and so intended by the testator, and being "*parenthetical*," the more strongly indicates testator's understanding of the preceding terms, and that Mrs. Dunlap was not embraced therein; but it was necessary, "*parenthetically*," to make a declaration of bequest, and the very terms used shows that his will was dictated by a skillful legal mind that well understood the signification and legal effect of these terms. It is a bequest in terms that Mrs. Dunlap should take such a *share as would be going to her father, if alive*, and shows plainly that the testator understood, but for this, she would not take under the designation of "*children of Mrs. Boyce*," and excludes any idea that he intended that any other grandchild of Mrs. Boyce should take under such designation. Suppose Mrs. Dunlap to have brother or sister, will it be contended that such brother or sister is to share with her, as it would, if embraced under the designation of "children of Mrs. Boyce?" Could the court, on such unnatural construction, reduce the legacy to Mrs. Dunlap by a partition with her brothers and sisters? If not, then they must take, not as descendants of Mrs. Boyce, but as legatees, and share equally with all the others, and thus leave Mrs. Dunlap a larger legacy than to any other. This absurdity exemplifies the utter untenability of saying the plaintiff, Elizabeth Catherine Dunlap, takes as legatee under the designation of children of her deceased grandmother. There is nothing in this case to show that the testator believed, when making his will, that the plaintiff's mother was still living, but the contrary; for her mother was the deceased wife of Col. H. C. Dunlap, the husband of the legatee, Mrs. Dunlap. Now, had the testator intended that this plaintiff should take as legatee,

why did he not say to the *children and grandchildren* of his deceased sister, Mrs. Boyce, he devised; and would this not have been quite as simple and natural as to have added the word "*living*" to that of "*children*" of Mrs. Boyce?

Again, it is evident that the testator knew that Col. H. C. Dunlap's second wife was the daughter of his deceased nephew, Wm. Boyce; he so describes her in the said bequest. It cannot be reasonably doubted, we think, from this, that he knew Col. Dunlap's first wife was dead, especially as she was his niece, one degree nearer in propinquity to him than the second wife; and as the plaintiff was her only surviving child, and, as we infer, lived at her father's, it is but reasonable to infer he knew of her, and that she was living; and as he specifically bequeathed to Mrs. Dunlap the share which would have gone to her deceased father, if alive, had he intended plaintiff should take, he would have specifically bequeathed to her the share which would have gone to her deceased mother, if alive. It is not necessary that we should conjecture any reason why testator did not provide for plaintiff. He had a right to leave her unprovided for without any reason. He did not make her a legatee, nor did he make a bequest to her mother. He may have given her mother in her lifetime what he intended as her share. Be this, however, as it may, he has left plaintiff unprovided for by his will, and we cannot amend it. This presumable intention of testator is in perfect accord with the proper construction of the statute, and disrobes the case of any seeming hardship. And as the statute had been previously expounded by this court, it may be fairly presumed, especially connected with the intrinsic evidence contained in the will, that the proper construction of the statute was then known to the testator.

The philosophy of this section 18, chapter 106, is, that when a testator mentions a legatee by name, he is to be presumed not to know that the legatee is dead; and that if he did know this fact, he would have made the bequest to the descendants of the legatee; and this being at war with the philosophy of the common law, it was intended to modify the common law rule of lapsed legacy. But no such philosophy is to be deduced

from section 1, article 2, chapter 46. Its philosophy is, that when a testator makes a bequest to several as a class, and persons are living of that class who can take, that it shall be presumed he intended the bequest to such living persons, and those of a different class can take only when there are none of the designated class, and the bequest must fail unless it be given to these persons, because it is presumed that if the testator knew all of the designated class were dead, he would have made the bequest to their descendants. But this presumption cannot be indulged where there are persons of the designated class who can take. The natural and legitimate presumption is, he intended to make the bequest to persons so designated by the class, and not to others of a different class. Hence the entire appropriateness of the language of the statute: "When a devise to several as a class, and one or more of the devisees shall die before the testator," gives the exact idea, and is to the same precise import, as if the redundant word *living* had been superadded, and makes the statute legally read: When a devise to several *living persons* as a class is made, and one or more of these persons should die before the testator, the devise shall go to the descendant of such legatee.

There is nothing in the statute which authorizes the belief that the Legislature intended that when a bequest is made to several as a class, that those dead, and known to be so by the testator, who, if living at the publication, would have belonged to the named class, shall be included with those of the class actually living at the publication. But the reverse is plainly indicated by the declaration in the second member of the section.

Even in last wills it has been uniformly held that grandchildren were not included in the term children, without enlarging words, or controlled by such circumstances as indicated that the testator used them in a synonymous sense. (*Jarman on Wills*; 2 *vol.*, 51, 3 *Am. edit.*; *Ewing's heirs, &c., vs. Handley, ex.*, 4 *Litt.*, 358; *Gore vs. Stevens*, 1 *Dana*, 105; *Churchill vs. Churchill*, 2 *Met.*, 469; *Sheets et al. vs. Grubb et al.*, 4 *Met.*, 341.)

There is nothing in this will indicative that testator used the word children of Mrs. Boyce as synonymous to grandchildren or issue or descendants, but the whole will is characterized with a knowledge and intelligence of legal terms and their signification rarely met with.

Believing that a true exposition of this statute was given by this court in Sheets *et al. vs.* Grubb *et al.*, 4 Metcalfe, and that there is nothing peculiar in the circumstances of this will authorizing us to take from those who are certainly legatees under this will, and give it to one who, it is certain, almost, was not intended by the testator to be a legatee, and who is not so by the provisions of the statute, there is no cause of reversing the judgment.