ROCKLAND WATER COMPANY *vs.* DAVIS TILLSON.

Knox.    Opinion May 22, 1883.

*Aqueduct.    Easement.    Quarry.    Negligence.*

In the case of an aqueduct, as in that of a way, the owner of the easement may peaceably pursue his right against any obstructions which the landowner throws in the way of its enjoyment.

If blasting in a quarry undermine an aqueduct its owner may adopt new means of supporting it in its place and if a broader base for the new support than the width of the original location of the aqueduct had been rendered necessary by the blasting it is not trespass on the owner of the soil to use his land for that purpose.

An aqueduct has the right of support in the land and if blasting under it within the limits of its location by the land-owner deprives it of its former support, the right still remains and its enjoyment may be reclaimed with the incidents which necessarily went along with it. The same is true of a change of the course of the aqueduct rendered necessary by the act of the owner of the servient estate.

In an action by the owner of an aqueduct against the owner of the land, or one acting under his license, for damages resulting from quarrying beneath the aqueduct, the verdict must give complete satisfaction for the whole injury. If the jury by their verdict allow only the cost of a structure less than permanent, they are to add a fund, the interest of which would be sufficient to keep the structure in permanent repair. But the defendant in such a case is not to be subjected to an indefinite liability for all future acts of the quarry owners doing damage to an aqueduct legally located and properly built.

It is not the negligence of the workers in the quarry which would render them liable in such a case, but the effect of their acts, negligent or not, to disturb the plaintiffs in the enjoyment of a dominant right.

The defendant is not liable in such a case for injuries occasioned by the acts of his grantees, though holding the quarry under his warranty deed.

ON.EXCEPTIONS AND MOTION.

Action to recover damages for injury to plaintiffs' aqueduct by removing its support in operating a lime quarry which it crossed. The writ was dated September 23, 1875. This was the second time the case had been tried. After the first trial it was carried to the law court on exceptions by both parties and is reported in 69 Maine, 255.

The case shows that the defendant worked the quarry from 1869, to April 24, 1871, when he sold to the Cobb Lime Company, and that company operated there between the date of the purchase and the date of the writ, causing a further damage to the aqueduct.

At the trial the verdict was for the plaintiffs for $226.31, and the plaintiffs moved to set aside this verdict, and for a new trial, and also alleged numerous exceptions to the rulings and instructions of the presiding judge.

The material facts upon the questions discussed in the opinion are sufficiently stated by the.court.

*A. P. Gould and J. E. Moore*, for the plaintiffs, claimed that as their charter gave them the right to take lands for their aqueduct for the sole purpose of furnishing the citizens of Rockland and others with pure water, they were responsible to the public and the right of election, and duty devolved upon them to decide whether the aqueduct should be removed from the quarry.

This right of election is recognized by the court in this case, 69 Maine, 255.

If the plaintiffs in good faith determine that it is their duty to change the location, the defendant cannot interfere with the exercise of that power; and if they make the change prudently and do not increase the value of the aqueduct thereby, but simply make it.as good and as secure as it was before, they are entitled to recover of him the cost. The plaintiffs insisted upon this claim at the trial and·objected to all evidence introduced for the purpose of showing the cost of constructing a bridge.

The plaintiffs are to be made whole for the injuries to their works occasioned by the acts of the defendant. The court thus instructed the jury but later on gave the following instruction : "You have a right to decide, if you see fit that the remedy should have been by a structure less than a permanent structure ; one requiring even oversight and repairs from time to time ; in which case, however, you would assess besides the value of the structure a sum of money to be added, enough to keep a structure in repair for as long a time as the corporation might need it." And counsel ask " with such a structure would these plaintiffs be as well off as they were before the defendant interfered with their property ? Would they be as well off, even as they could reasonably be made by building a proper support and protection for the pipe where it is ? . . . We say first that the defendant had no right to impose this perpetual peril and burden upon the plaintiffs, when by building a permanent structure, they could be relieved from it."

" The constant peril to the water works by having their pipe supported across a chasm like that created by the defendant, by less than a permanent structure, one that required watching and frequent repairs, cannot be measured by the mere cost of such watching and repairs. . . . The aqueduct was, when the defendant disturbed it, where it would be perpetually secure. The jury were first to guess how long the corporation would need it, then they were to guess how much less than a permanent structure it was safe or would be likely to put up ; and again they were to guess how much oversight and repairs a structure 'less than permanent' would require and cost."

But counsel claimed that the chief infirmity with the instruction was that it would not make the plaintiffs whole ; and that in close connection with this comes in the further instruction, " The plaintiffs contend that the blasts of the quarry would jar the bridge, this Siamese structure of this vein or chasm. . . . At this point comes in, however, another consideration which you should think of. While considering that there may be a liability to shock, it must also be taken into consideration that any person, who so used the quarry as to injure the pipe legally and

properly resting through and over the quarry, would be liable to such injury, and they would be liable whether done negligently or not."

Counsel claimed that this was virtually an instruction that the plaintiffs were not entitled to a sufficient sum to build a bridge of such a character that it would afford protection from injury from the jar produced by blasting in the quarry, even if the blasting was conducted without negligence or in a prudent manner.

From November 11, 1869, to April 14, 1871, the plaintiffs were under the necessity of making frequent temporary repairs; and they were subject to loss and inconvenience by reason of the freezing of the pipe and the loss of the water by leakage. The plaintiffs claimed damages for these temporary repairs and incidental losses in their writ; and counsel contended that though amply maintained by proof they were not allowed, that the only instruction relating to them was as follows: "The plaintiff cannot recover for temporary repairs and then wait and recover for other temporary repairs." And this, counsel claimed, cut off the recovery of every cent of these expenses.

Plaintiffs' easement having been acquired only by laying their pipe across Ulmer's field and afterwards paying him the damage agreed, extended only over the land upon which the pipe laid. They have no right to the soil on either side of it; and they have no right to change the location. *Outhank* v. *Lake Shore R. R. Co.* 71 N. Y. 194; *Jennison* v. *Walker*, 11 Gray, 423; *Chandler* v. *Jamaica Pond Aq. Co.* 125 Mass. 544; Washburn's Easements (2d ed.), 225; *Jaqui* v. *Johnson*, 27 N. J. Eq. 526; *Idem*, 526.

Counsel further argued: "We say first, that as defendant was opening this quarry at his own risk his co-tenants could not be responsible for his torts; second, that if he was doing it as a tenant in common his trespass does not give the injured party the right to take the property of his co-tenants to repair the damage; third, that if the property of Tillson and his co-tenants could be taken to repair the injuries done by him, the property of his innocent grantees who hold the quarry under a conveyance of the lime rock from him, and authority to take it all out with a cov-

enant of warranty against the incumbrance of the plaintiffs' easement cannot be taken to repair the damage without compensation."

Counsel further contended that the defendant was responsible for the injury done to the aqueduct by his grantees. He only owned the lime rock. He only sold the lime rock. Sold it to be quarried. He covenanted with his grantees that there was no incumbrance. His grant authorized the Cobb Lime Company to take out and remove all the lime rock in that quarry. " I authorize you to take out all the lime rock and I guarantee that if you destroy the easement of the Water Company by doing it I will pay all the damage."

It cannot be questioned that if the Cobb Lime Company were sued by these plaintiffs for injuries caused by removing the lime rock, judgment against them would alone be a sufficient ground of action against this defendant upon his covenant to them.

That would be circuity of action. *Brown* v. *Manter*, 21 N. H. 528; *Bates* v. *Norcross*, 17 Pick. 14; *Haynes* v. *Stevens*, 11 N. H. 28; *Thompson* v. *Banks*, 43 N. H. 540; *Comstock* v. *Johnson*, 46 N. Y. 615; *Voorhees* v. *Burchard*, 55 N. Y. 98; Wood on Nuisances, § § 77, 828; *Irvine* v. *Wood*, 51 N. Y. 224; Wash. Easements, (2 ed.) 665; Sedg. Damages, 162; Ang. Wat. Courses, 439.

Counsel further elaborately argued the motion to set aside the verdict.

*Rice and Hall*, for the defendant, cited : S. C. 69 Maine, 255; *Pen. R. R. Co.* v. *White*, 41 Maine, 512; *Farnum* v. *Platt*, 8 Pick. 338; *Liford's case*, 11 Rep. 46; Wash. Easements, 564; *Prescott* v. *White*, 21 Pick. 341; *Prescott* v. *Williams*, 5 Met. 429; *Dygert* v. *Schenck*, 23 Wend. 446; *Waggoner* v. *Jermaine*, 3 Denio, 306.

SYMONDS, J. In 1869 and 1870, the defendant, in working a lime quarry, disturbed the plaintiffs' aqueduct, and this action is to recover damages therefor. The plaintiffs had acquired under their charter the right to maintain the aqueduct through the field where the excavations were made. The owner of the land

authorized the defendant to open the quarry. The questions, therefore, which the case presents, arise between the owner of an easement on the one hand and on the other the owner of the fee, or one acting by his authority, who in changing and developing the property for lawful business purposes does damage, temporary or permanent, to the structure which the easement protects.

"The existence of a servitude upon an estate does not affect the general rights of property in the same. All these remain, subject only to the enjoyment of the existing easement. . . The proprietor of the soil retains his exclusive right in all the mines, quarries, springs of water, timber and earth, for every purpose not incompatible with the public right of way." Wash. Easements, 227, 228.

"The soil and freehold remain in the owner, although encumbered with a way. Every use to which the land may be applied, and all the profits which may be derived from it consistently with the continuance of the easement, the owner can lawfully claim." *Perley* v. *Chandler*, 6 Mass. 454.

"If any other person has an easement in an estate, the owner has still all the beneficial use, which he can have consistently with the other's enjoyment of that easement." *Atkins* v. *Bordman*, 2 Met. 467.

"Nothing is better settled than that a highway leaves the title of the owner unaffected as to everything except the right of the public to make and repair and use it as a way, and for some other public purposes." *Codman* v. *Evans*, 5 Allen, 308.

The defendant had the right to work the quarry in any way which did not deprive the plaintiffs of the use, nor disturb them in the enjoyment of the easement; but any obstruction of the easement or encroachment upon it, any disturbance of the soil or other support or protection by means of which the easement was enjoyed, which resulted in damage or which would furnish evidence in favor of the land-owner against the existence of the plaintiffs' right, would support an action by the owner of the easement to recover damages for the invasion of his right and for the injury done. *Hastings* v. *Livermore*, 7 Gray, 194. Nor

is it a defense to such an action to show that the defendant, when he injured the plaintiffs' right of property, was pursuing a lawful business and proceeding with care. The rule is correctly stated in *McKeon* v. *See*, 4 Rob. (N. Y.) 449. "The case presents the naked question whether the lawful character of the results of an occupation, trade or mechanical art, or the care with which it is carried on, can prevent any right of action by those whose enjoyment of life or property is destroyed by the mode or means of conducting such occupation, trade or mechanical art. The right of jarring a neighbor's house by the motion of a steam engine upon one's own premises cannot depend at all upon the utility or lawfulness of the purpose for which such motion is employed, or its final results. The intermediate injury before such results are obtained, wrought upon another's property or enjoyment of life, make such employment unlawful." The useful and lawful character of the business of working the quarry did not justify the defendant in disregarding the plaintiffs' right nor in disturbing them in its enjoyment. The question of the power of a court of equity in any case to relieve a valuable mine of the burden of such an easement, changing the direction of the aqueduct on terms without impairing its use, does not arise. The rule stated is the one which governs this action at law.

It is also true, in regard to an aqueduct as in regard to a way, that the owner of the easement may peaceably pursue his right against any obstructions which the land owner throws in the way of its enjoyment. If the blasting in the quarry undermines the aqueduct, he may adopt new means of supporting it in its place ; and if a broader base for the new support than the width of the original location of the aqueduct has been rendered necessary by the blasting, it is not a trespass upon the owner of the soil to use his land for that purpose. The aqueduct has the right of support in the land, and if the blasting under it within the limits of the location by the land-owner deprives it of its former support, the right still remains and its enjoyment may be reclaimed with the incidents which necessarily go along with it.

In the present instance the company, having power by charter to take land for the purpose of laying and maintaining its aque-

duct, after completing its works through the *locus* agreed with the proprietor upon the amount of the damage and paid it, taking his receipt in full therefor.   It was held in this case, 69 Maine, 255, that the plaintiffs thereby acquired a permanent easement under their charter.   But no width of location was defined.   The right acquired was to maintain the pipe in the ground in the position in which it had been placed.   When the earth which then supported and protected the pipe was removed by the owner of the fee, it was an act which affected the means of support and protection first adopted, not the right.   A superior right is not lost by a trespass or tort ; and if not, the right of support must include the right, in any case where it is practicable to do it, to substitute what is necessary for the purpose in place of a natural support or protection wrongfully removed by the owner of the soil.   There may be cases of the total destruction of the means by which an easement is enjoyed or its permanent obstruction, in which it is impracticable to exercise the right to repair or rebuild or the right is not worth exercising, and the law will give only the value of the easement, not the expense of restoration, in damages, but in those cases the trespass alone has no effect to extinguish the right.

The same is true of a change of the course of the aqueduct, rendered necessary by the act of the owner of the servient estate. If the excavation is one which cannot be suitably bridged, or over which it is impracticable to support the pipe, the owner of the easement may lay the pipe round the excavation upon land of the same owner, in a place where it is reasonable and practicable to do so, and may maintain it there while the obstruction continues, without committing a trespass ; just as " if a private way is unlawfully obstructed by the owner of the adjoining land, a person entitled to use the way may justify passing over the adjoining close, so far as may be necessary to avoid the obstructions, taking care to do no unnecessary damage." *Kent* v. *Judkins*, 53 Maine, 160.   We can see no difference in principle in this respect between an aqueduct and a private way.   A dif-

ferent class of circumstances might be required to show the reasonableness and necessity of building a structure, like an aqueduct, round such an obstruction, from those which would warrant a traveller in leaving a road which had been rendered impassable, but we have no doubt that, as to the former, there might be cases in which the legality of such an act would be sustained. The same "fundamental principle of the common law, that a man shall not be heard to complain of an injury which is the direct and necessary result of his own illegal act," applies in both instances. In the present case, however, there has been no deviation of the course of the aqueduct, and the jury have found that none was necessary.

The defendant on June, 15, 1869, purchased of Ulmer, from whom the plaintiffs acquired their easement in 1852, one-fourth of the lime rock in the quarry, and acted for Ulmer as well as for himself in opening it. Under the circumstances stated, this right of new support or of change of course for the aqueduct pertained to the easement not only against the defendant who was the immediate trespasser, but also against Ulmer by whose authority and in whose behalf as well as in the behalf of the defendant the blasting was done. The right of support, under the original and under the changed conditions, was a part of the easement, and the easement was a right superior to any other estate (under Ulmer) in the land or mine, and remained an incumbrance upon them both in the hands of the grantees of Ulmer, holding by direct or mesne conveyances from him after the easement was granted.

The excavations by the defendant were from 1869 to April 24, 1871. The case was tried in March, 1882. During all this time the pipe has been carried over the excavation, where it still remains. The plaintiffs allege in their declaration that by the defendant's acts "they will be compelled, in order to make the same safe to remove their aqueduct and lay the same around said premises;" and their claim in argument is, that having a public duty to perform, to supply the city with water, they have a right to determine for themselves whether it is necessary to change the location of the aqueduct, or

not; that the quarry continued to be widened under the pipe by the defendant's grantees until about the date of the writ, so that till then there was no opportunity for them to decide what permanent and final arrangement it was necessary to make, the bridge over the quarry being regarded as a temporary structure only; and that now having decided that it is necessary in their judgment to go round the cut, they have a right to recover of the defendant the expense of making such a change, whatever the jury may think of the feasibility of suitably bridging the cut at less cost.

This claim seems to us to be without foundation. It was for the jury to determine what damage was caused by the defendant's acts, and that includes the inquiry what is necessary to be done, and at what expense, to restore the plaintiffs to the enjoyment of their right. It has already been decided in this case that "the jury are to judge whether any, and if so, what repairs should be made, and from this the actual injury to the property, and assess the damages accordingly." 69 Maine, 270. The plaintiffs could not justify going round the cut at all, without the payment of land damage, except by satisfying the jury of a necessity for so doing, created by the defendant, such at least as to render that the most judicious course to pursue. An election on their part to make the change does not affect their legal relation to the defendant. They may have the right under their charter, by making compensation for lands taken for the new location, to go round the cut, or to remove the aqueduct altogether from the Ulmer field, if they deem it necessary to do so, and the performance of their public duty may require the exercise of their judgment in that respect, but their judgment is not made the measure of the rights or liabilities of the defendant. It was for the jury to say what method of restoration was judicious and practicable, and what was the expense of it.

The charge left this question to the jury, to decide what mode of repairing was most judicious, and was therefore to be considered in assessing the damages; whether it should be by going around or across the cut; if the latter, whether it should be by a permanent structure, practically speaking, or by "a structure

less than a permanent structure, one requiring even oversight and repairs from time to time, in which case, however, you would assess besides the value of the structure a sum of money to be added, enough to keep a structure in repair for as long a time as the corporation might need it. . . . You may decide that they may go across with a permanent structure, or if it were more convenient and better, more judicious, that it should be even less than permanent, by putting money enough in the hands of plaintiffs to make it equivalent to permanent, that is, so that the interest would keep it in repair, keep it in restoration, because there are many cases where it is an impossibility to have a permanent structure."

We think these instructions justify themselves against the criticism of the learned counsel for the plaintiffs. The jury could not have failed to understand that, if they allowed in their verdict only the cost of a structure less than permanent, they were to add a fund the interest of which was sufficient to keep the structure in permanent repair. If there were anything doubtful in the phrase " for as long a time as the corporation might need it," it is sufficiently explained by the later sentences already quoted and by those which directly follow : " But whether in one or the other mode, it must be, the law says, a fair, reasonable, practicable, and the most judicious thing, to do. However done, it must be enough to make the plaintiffs whole, to pay for the entire injury, and if not to replace the plaintiffs in the exact conditions they were in, to grant an equivalent. The law does not expect that perfection can be always or often attained but requires that substantial and reasonable reparation and as perfect as may be, acting judiciously, wisely, and well, shall be the rule for your verdict."

The plaintiffs have no ground of exception to that part of the charge which directed attention to the fact that if hereafter the blasting in the quarry should jar and injure the aqueduct, properly constructed across the cut, the liability therefor, would rest upon those by whose act the injury was done. "While considering that there might be a liability to shock, it must also be taken into consideration that any person who so used the quarry as to injure

the pipe, legally and properly resting through and over the quarry, would be liable for such injury, whether done negligently or not." Clearly this is true. In determining the character of the structure required, the jury might consider its exposure to shocks from blasting in the quarry. This was in the plaintiffs' favor. But the defendant was not to be subjected to an indefinite liability for all future wrongful acts of the quarry owners, doing damage to an aqueduct, legally located and properly built. Subsequent operators in the quarry would have no more right to injure or disturb such an aqueduct than the defendant had to blast under the pipe where it was originally laid, and the extent of the injury done, would be the measure of liability in the one case as in the other. As we have already seen, it is not the negligence of the workers in the quarry which renders them liable in such a case, but the effect of their acts, negligent or not, to disturb the plaintiffs in the enjoyment of a dominant right.

Exception is taken to the instruction that "all the damages that can ever be recovered are to be recovered in this one suit; that is, the plaintiffs cannot recover for temporary repairs, and then wait and recover for other temporary repairs. They must recover in this suit all they can ever recover." It is claimed by the plaintiffs that the defendant, until April 24, 1871, when he sold to the Lime Company, was constantly widening the cut, that permanent repairs could not properly be made till the whole width of lime rock in the vein was removed, and there was no danger of further widening, and that the expense of temporary repairs to April 24, 1871, as well as the cost of a permanent structure across the vein, should be included in the assessment of damages.

It is to be observed that the liability of the defendant for damages is not to be measured by what the plaintiffs have done, or have omitted to do in the way of repairing the injury. The cost of the repairs which the plaintiffs have made, "is not to control, and may not even throw any light upon the question of damages. The plaintiffs may repair in their own way, and thus make the property very much more, or less valuable than it was before." 69 Maine, 269.

In repeated rulings at the trial the jury were directed to allow the plaintiffs full compensation for the injury which they had sustained. They " are to receive damages enough to make them whole ; they shall have what was taken away restored, or its practical and reasonable equivalent." The jury are told they may regard themselves as a committee of view, thrown upon the spot on the date when the excavations by the defendant ceased, to examine the territory, to satisfy .themselves of the comparative expense of the different modes of repair, and the effect of each upon the conflicting rights of property in the land, and, taking all into consideration, " to decide what was, upon the whole, the judicious thing to be done to repair and restore that property, to make the plaintiffs whole from the injury put upon them up to that date, and from any consequences that may follow from that injury."

The remark to which exception is taken, that " the plaintiffs cannot recover for temporary repairs, and then wait and recover for other temporary repairs," was intended, as the context shows, rather as an enlargement than as an abridgement of the plaintiffs' claim. It was to impress upon the jury that the plaintiffs' right of recovery in this action was not limited to the temporary repairs which had then been made ; that no other right of action remained for future temporary or permanent repairs, and that full compensation for the whole injury must be given by this verdict. Moreover, the remark is strictly true in itself. It is by no means a ruling that the expense of the temporary repairs is not to be considered in determining the damages, but on the contrary a statement that the plaintiffs must not be limited in their recovery here, to costs already accrued, because after such a verdict they could not wait, and in another action recover the amount of future expenditures for a similar purpose. Therefore, the verdict must give complete satisfaction for the whole injury.

It is next contended by the plaintiffs that the court erred in ruling that the defendant was not liable for the acts of his grantees in removing rock from the quarry after April 24, 1871 ; that by giving them a deed of warranty, free from incumbrances, of an undivided fourth of the lime rock, he authorized them to remove

it, and, covenanting against the existence of the easement, is liable to the plaintiffs for all that his grantees, the Lime Company, did while proceeding according to their deed. But we think the rule of damages given to the jury at the trial was substantially in accordance with the former opinion of the court in this case. It was held in *Waggoner* v. *Jermaine*, 3 Denio, 306, that one who erects a nuisance upon his own land, a dam which obstructs a water course without right, and then conveys and surrenders the possession of the premises to another, with covenants of warranty for quiet enjoyment, remains liable in an action on the case for the damages occasioned by the continuance of the nuisance, subsequent to the conveyance. But the court has already decided that in this case the wrongful act of the defendant was not a continuing one, that he has erected no continuing nuisance for the maintenance of which, successive actions may be brought, that the injury complained of was in the nature of waste, and that the damages, present and continuing, must be recovered in one action.

If every grantor were liable, directly, to the parties injured for torts committed by the grantee in obstructing easements upon the granted premises, which were subsequently found to exist by legal right, although a warranty against incumbrances had been given, his covenant with one, the grantee, would expose him to actions by as many persons as there were different incumbrances, or in the case of a private way, by as many persons as had the right to use it, and to as many actions as the number of torts the grantee saw fit to commit after the existence of the easement was known; and this multiplicity of actions by the persons whose rights the grantee had invaded, would not relieve the grantor from liability to an action by the grantee, in which the measure of damages would be "a just compensation to the plaintiff for the real injury resulting from the incumbrance." *Wetherbee* v. *Bennett*, 2 Allen, 428.

The liability of the defendant in this respect, is upon his covenant and to the grantees or those in privity of estate with them. It is for them to determine whether to bring suit upon it or not. They may waive their rights under it, if they will. The

rule of damages might be very different in such an action, if brought, from that which controls this case.

The covenant was not given to the plaintiffs, nor is this an action upon it. The court has already excluded the theory of a continuing nuisance, the maintenance of which, by the grantee, under a covenant from the defendant for quiet enjoyment, renders the defendant liable to successive actions upon the case, and held that here the trespass did not continue beyond the act. The defendant has done no act of trespass since the deed to the Lime Company, and his grantees are not his agents.

We have examined the exceptions to the rulings, admitting or excluding evidence against the objection of the plaintiffs, and find no error to the prejudice of their legal rights. The motion for a new trial cannot prevail. There is evidence in the case, the credibility of which it was for the jury to determine, which is sufficient, if believed, to justify the result which they reached.

> *Motion and exceptions overruled.*
> *Judgment on the verdict.*

APPLETON, C. J., BARROWS, DANFORTH, VIRGIN and PETERS, JJ., concurred.