Elizabeth A. TEEL and Donald R. Teel

v.

Ralph COLSON.

Supreme Judicial Court of Maine.

Jan. 19, 1979.

Grossman, Faber & Miller, P.A. by Barry M. Faber (orally), Rockland, for plaintiffs.

Richardson, Hildreth, Tyler & Troubh by Glenn R. Anderson (orally), Harrison L. Richardson, Ronald D. Russell, Portland, for defendant.

Before WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

In November 1975 Elizabeth Teel and her husband, Donald Teel, each filed a complaint in the Superior Court in the County of Knox against the defendant, Ralph Colson. In her complaint Mrs. Teel sought damages in the amount of $20,000.00 for the physical injury sustained by her when the defendant's allegedly vicious dog on July 5, 1975 bit her in the mouth and face, and also for the ensuing traumatic effect, so the document states, to her nervous system as well as for the consequential loss of income and incurrence of medical and hospital bills. In his separate complaint Mr. Teel sued to recover the sum of $5,000.00 as compensation for the medical and hospital expenses incurred, for the loss of his wife's earnings and for loss of consortium resulting from his wife's encounter with the defendant's dog. There is no allegation in either case that Mrs. Teel suffered a permanent injury. After consolidation for trial, both actions were tried in August 1976 before a jury. But, at the close of the evidence offered by the plaintiffs, the defendant moved for directed verdicts in each action. Rule 50, M.R.Civ.P. The Court granted the motions and judgments for the defendant were accordingly entered against

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

the plaintiffs. We deny the plaintiffs' appeals from the unfavorable judgments.

We are mindful of the rule that, in testing the propriety of a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the verdict is directed and that a verdict should not be ordered for the party defendant if any reasonable interpretation of the evidence viewed in that light, including every justifiable inference therefrom, would allow recovery by the party plaintiff. *Supruniuk v. Petriw*, Me., 334 A.2d 857 (1975); *Cogswell v. Warren Brothers Road Co.*, Me., 229 A.2d 215 (1967).

Taken most favorably to the plaintiffs, the evidence warranted the following findings of fact. See *Johnson v. Whitten*, Me., 384 A.2d 698, 700 (1978).

On July 5, 1975 at about one o'clock in the afternoon Mrs. Teel was at work at the Rockport Mini-Mart in Rockport when Colson pulled up to the store's gas pump in an open-back pick-up truck. A large unmuzzled black dog was riding in the back of the truck. Mrs. Teel's duties, besides waiting upon customers in the store, included the servicing of motorists at the gas pump. Told by the defendant to "fill it up," Mrs. Teel went around to the pump and disengaged the nozzle and hose. As she bent over to unscrew the gas cap on the truck, the dog made a sudden lunge at her while growling and snapping, and succeeded in gripping her face from the bridge of her nose to the inside of her mouth under the front teeth in the gums. When the dog released its grip and backed away, Mrs. Teel was left with noticeable scratches and indentations made by the dog's teeth. She immediately advised the defendant that his dog had bitten her, but Colson retorted that she had "charged *his* dog" (emphasis provided) and refused to give his name. Mrs. Teel jotted down the license number of the truck as the defendant drove away, which led to the defendant's subsequent identification as the driver of the truck and the alleged owner of the dog.

Mrs. Teel continued to work that day, but in the evening she did go to the Knox County Hospital, where she was treated for the minor physical abrasions on her face and given a tetanus shot. She testified that, following the dog's attack, she has been afraid of animals and developed a chronic nervous condition causing menstrual problems for herself and marital difficulties in her marriage, to such an extent that in the fall of 1975 she filed for divorce. The complaint for divorce was not pursued, however, and the plaintiffs were still living together at the time of the trial of the instant actions in August, 1976.

Under Maine law, a person injured by dog bite has available to him for the recovery of his damages arising therefrom two distinct causes of action, one at common law and one under statute. The common law action is based on *knowledge* of the owner or custodian of the offending dog *of the injurious propensity* of the animal.

"By the common law the keepers of wild animals were unqualifiedly liable for all injuries done by such animals. No matter how carefully the keeper restrained and guarded his animals, his care did not exempt him, if they did damage. The owners or custodians of animals not wild [such as dogs] were liable for injuries done by them, if they knew of the injurious propensity of the animal. The most scrupulous care would not excuse them.

\* \* \* \* \* \*

In actions for injuries caused by such animals, the plaintiff had only to prove the keeping and the scienter." *Hussey v. King*, 83 Me. 568, 572, 22 A. 476, 477 (1891).

The statutory cause of action, on the other hand, in the case of damage caused by dogs, dispenses with the common law ingredient of knowledge of the animal's injurious propensity. Indeed, 7 M.R.S.A., § 3651 (1964) provides that

"[w]hen a dog does damage to a person or his property, his owner or keeper, and the parent, guardian, master or mistress of any minor who owns such dog, forfeits to the person injured the amount of the

damage done, provided the said damage was not occasioned through the fault of the person injured, to be recovered by a civil action." [2]

The distinction was elaborately explained in *Hussey v. King*, supra, 83 Me. 568 at page 575, 22 A. 476 at pages 478–479:

"Such being the common law, the statute now comes in, and, in the case of dogs, removes the need of alleging and proving even the scienter. It makes the owner or keeper of a dog *prima facie* absolutely liable for an injury done by the animal. It leaves him where the common law left the keeper of a wild animal,—in the position of an insurer. It removes from the keeper of a dog the protection of want of notice, which the common law allowed. He now keeps a dog at his peril. If the dog does an injury, the injured party has an action both at common law, and under the statute. At common law, as said by Lord Denman, in *May v. Burdett,* the gist of the action was the keeping the animal after notice of his injurious propensities. Under the statute, the gist of the action is simply the keeping of the dog. The statute has made all else immaterial. An attack upon person or property by a dog is a trespass, for which the keeper of the dog must now answer as fully and unconditionally as for his own trespass." (Emphasis in original)

■ Thus, the common law limits recovery for damage caused by a dog to cases where the owner or keeper knew of the injurious propensity of the animal, and in those cases it allows a remedy to any person injured. The statute, on the other hand, is not concerned with the owner's or keeper's knowledge of the injurious propensity of the dog, but it limits the civil action it provides to the person injured only. This distinction was recognized in *Begin v. Bernard*, 160 Me. 233, 239, 202 A.2d 547, 550 (1964), where this Court held that a husband could not recover under the statute his consequential damages for medical expenses incurred and for loss of consortium resulting from the injury to his wife caused by the defendant's dog, because the statutory remedy is available only to the person sustaining the direct injury.

Both complaints in the instant case respectively allege as grounds for recovery of damages on account of the injury to Mrs. Teel by reason of her being bitten by Colson's dog "negligence of the defendant in carrying in the rear end of his pick-up truck a vicious animal who was not muzzled or in any way constrained." In their pretrial memorandum, adopted by the Court below, the plaintiffs stated the issues in the case to be

"negligence and degrees of negligence of the Defendant whereby the Plaintiff, Elizabeth A. Teel, was caused to suffer personal injuries as a result of an attack by the dog of the Defendant, and loss of consortium to Plaintiff, Donald R. Teel."

■ We have in mind that negligence of the defendant is immaterial either at common law or under the statute. *Hussey v. King*, supra. Also, the law of Maine at the time of the injury to Mrs. Teel did not permit recovery by Mr. Teel under the statute for the medical expenses incurred because of his wife's injury, nor for his loss of consortium, but it did recognize his right to recover for such injuries at common law upon proof that the owner or keeper of the dog had knowledge of the animal's injurious propensity. *Begin v. Bernard*, supra. The attorney for the plaintiffs never asserted, neither in his pleadings, nor directly to the Court, that he sought recovery under the statute. The defendant's attorney argued his motion for a directed verdict on the ground that the plaintiffs had introduced no evidence whatsoever to show that the defendant knew or had reason to know that his dog had a vicious propensity. The Court below in explicit and clear terms indicated

---

**2.** Section 3651 was first enacted in substantially the same form as it now reads by R.S. 1821, c. 174, § 1, except that it provided that the owner or keeper was liable for double damages to the person injured. The double damages provision was later deleted (see P.L. 1885, c. 115), whereas the provision regarding the absence of fault on the part of the person injured was added by P.L. 1903, c. 109, § 1.

to the plaintiffs' attorney he was granting the motion for a directed verdict, because at common law in order to recover on a suit in negligence for a dog bite the plaintiff must show that the defendant kept the animal after notice of its injurious propensities, and that there had been no change in the common law rule of negligence regarding dog bites. In response thereto, the plaintiffs' attorney did not then advance a right to recover under the statute, but rather indicated to the Court that he thought there was enough evidence in the case to successfully meet the motion for a directed verdict, when he asked:

"The fact that the Plaintiff testified that she asked questions of the Defendant as to the dog's biting, the dog's having a rabies shot, there was no response, that there was no statement, this would not go to the weight?"

To which the Court answered:

"This would be pure speculation, Mr. [Attorney], it would be pure speculation as to whether or not anyone, even the jury, would be warranted in finding that this in any way indicates or would tend to be any evidence with regard to the Defendant's knowledge of prior vicious propensities."

■ This colloquy between the plaintiffs' attorney and the presiding Justice demonstrates beyond any doubt that the plaintiffs' case was still being tried, as previously specified in the pretrial memorandum, on principles of "negligence" of the defendant "in carrying in the rear end of his pick-up truck a vicious animal who was not muzzled or in any way constrained," there being a necessary implication in such phraseology that the defendant knew or should have known of the dog's vicious character. Any suggestion to the Court by counsel for the plaintiffs that Mrs. Teel was also seeking damages for her injury under the statute would undoubtedly have resulted in a denial of the motion for directed verdict respecting her complaint, if the motion had not been withdrawn by the defendant in relation to her case. Where the motion for directed verdict was being made at the close of the evidence offered by the plaintiffs, any necessary amendment to the pretrial order and possibly to Mrs. Teel's complaint so as to align the subsequent procedural course of her action in accordance with the new suggested concepts of recovery to prevent manifest injustice would have been allowed. Rule 16(c), M.R.Civ.P. Failure to request such modification of the previously charted course of the trial must be deemed a judgmental stratagem on the part of counsel for the plaintiffs.

This is not the case of a 12(b)(6) motion to test the sufficiency of a complaint, where the standard to be used to determine the proper action to be taken upon such a motion is, whether or not it appears *to a certainty* that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *McNally v. Mokarzel*, Me., 386 A.2d 744 (1978); *Bramson v. Chester L. Jordan & Co.*, Me., 379 A.2d 730 (1977); *Cohen v. Maine School Administrative Dist. No. 71*, Me., 369 A.2d 624 (1977); *Jones v. Billings*, Me., 289 A.2d 39 (1972); see also *Hayes v. Bushey*, 160 Me. 14, 196 A.2d 823 (1964). Rather, we are dealing with a case that, so far as the plaintiffs are concerned, has been tried to the jury, and the issue of a possible recovery under the statute is brought for the first time on appeal.

■ As stated in *Reville v. Reville*, Me., 289 A.2d 695 (1972):

"The general rule governing proper appellate procedure is that a party who seeks to raise an issue for the first time at the appellate level is held, in legal effect, to have 'waived' the issue insofar as he utilizes it to attack a judgment already entered and from which an appeal is taken; therefore, appellate review will be denied to such question."

\* \* \* \* \* \*

"This principle is controlling notwithstanding that the issue pertains to an alleged violation of the Constitution of the United States."

To the same effect, see *Harrington v. Inhabitants of Town of Garland*, Me., 381

A.2d 639 (1978); *Libby v. Perry*, Me., 311 A.2d 527 (1973); *Younie v. State*, Me., 281 A.2d 446 (1971); *Frost v. Lucey*, Me., 231 A.2d 441 (1967).

The reason for the rule is that a contrary appellate procedure would deprive the trial justice of the opportunity to rule on the issue raised for the first time on appeal and deny the appellate court the trial court's decision thereon made in the atmosphere of the trial, with his informed thinking on the matter. It would oftentimes present issues at the appellate level, where the necessary subsidiary facts in support thereof have not been fully developed for a proper determination on appeal. Overall, it would foster proliferation of litigation by promoting piecemeal appeals frustrating the main purpose of our rules of civil procedure "to secure [to litigants] the just, speedy and inexpensive determination of every action." Rule 1, M.R.Civ.P.

■ Specifically, proper appellate practice will not allow a party to shift his ground on appeal and come up with new theories after being unsuccessful on the theory presented in the trial court. It is a well settled universal rule of appellate procedure that a case will not be reviewed by an appellate court on a theory different from that on which it was tried in the court below. *McInnis v. Town of Bar Harbor*, Me., 387 A.2d 739 (1978).[3]

■ The Justice in the Superior Court committed no error in granting the defendant's motion for directed verdicts in light of the issues as outlined by the plaintiffs in their pretrial memorandum and adopted by the Court in its pretrial order. The plaintiffs' evidence, viewed in the light most favorable to them, was utterly insufficient to support a finding by the jury that the

defendant had knowledge of the dog's alleged vicious nature. The evidence related solely to the circumstances of the dog's assault on Mrs. Teel and the subsequent consequential effect thereof upon her, physically and mentally. It would have been pure speculation on the part of the jury to find that the defendant knew of the vicious propensity of the dog. See *Martin v. Prudential Insurance Co.*, Me., 389 A.2d 28, 32 (1978).

But, since it is obvious that Mrs. Teel had a cause of action under the statute for the damage done to her as a result of the dog's bite, provided the damage was not occasioned through her own fault, the question remains whether we should not consider remanding the case for a new trial on our own motion. We believe not.

■ We do concede that exceptional circumstances may exist where the application of the general rule of practice under which appellate courts will not entertain issues or theories raised for the first time on appeal would obviously result in a plain miscarriage of justice, and that under such circumstances the court will consider the belated issue or theory to promote the ends of justice. See *Hormel v. Helvering*, 312 U.S. 552, 558, 61 S.Ct. 719, 722, 85 L.Ed. 1037 (1941).

In *Hixon v. Mathieu*, Me., 377 A.2d 112 (1977), where the issues in the case were submitted to the jury under inappropriate negligence instructions, we concluded that, notwithstanding that critical erroneous instructions were not objected to, justice demanded the plaintiffs be granted a new trial; otherwise the plaintiffs, through the error of the trial justice, would have been deprived of a fundamental right, the right to a fair trial, which would not be consistent with substantial justice.

3. Accord: *Tomes v. Chrysler Corporation*, 60 Ill.App.3d 707, 18 Ill.Dec. 71, 377 N.E.2d 224 (1978); *Sturdevant v. Mills*, 580 P.2d 923 (Mont.1978); *Vitale v. Elliott*, 387 A.2d 1379 (R.I.1978); *Brown v. Wood*, 575 P.2d 760 (Alaska 1978); *Leiser v. Sparkman*, 281 Or. 119, 573 P.2d 1247 (1978); *Teson v. Vasquez*, 561 S.W.2d 119 (Mo.App.1977); *Rutherford v. Clark*, 546 S.W.2d 932 (Tex.Civ.App.1977); *Grissom v. North Carolina Dept. of Revenue*,

34 N.C.App. 381, 238 S.E.2d 311 (1977); *Three Lakes Ass'n v. Whiting*, 75 Mich.App. 564, 255 N.W.2d 686 (1977); *Bastianelli v. Toco Intern., Inc.*, 375 A.2d 595 (N.H.1977); *Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 362 N.E.2d 994 (1977); *Cleary v. Indiana Beach, Inc.*, 275 F.2d 543 (7th Cir. 1960); *Gilby v. Travelers Insurance Company*, 248 F.2d 794 (8th Cir. 1957).

In *Smith v. Tonge*, Me., 377 A.2d 109 (1977), where no specific point of error was saved for appellate review, we observed that our reviewing function is necessarily limited to a determination, whether any of the substantial rights of the appellant have been violated. But we expressly stated that we had no right as a Law Court to disturb a judgment under such circumstances unless after an examination of the record in its entirety we are convinced that the appellant has been substantially prejudiced, remembering that the burden of demonstrating this prejudice rests with the appellant.

This is not a case where a new constitutional right not readily foreseeable was established between the time of trial and the appeal (see *Nadeau v. State*, Me., 232 A.2d 82, 85 (1967)); nor is this a case of deprivation of the fundamental right of a fair trial, both circumstances being of such crucial nature as to be within the scope of exceptional circumstances contemplated by the rule. See *State v. Evans*, 165 Conn. 61, 327 A.2d 576 (1973).

The instant case does not present exceptional circumstances within the meaning of the exception to the stated general rule of appellate practice. Initially, we note that the existing law respecting dog bite causes of action, as it stood at the time of the injury to Mrs. Teel and at the time of the trial of the plaintiffs' cases, had been so clarified by this Court as to leave the ordinary prudent practitioner no room for dispute as to its meaning. This leads us to conclude that plaintiffs' counsel's complete disregard of and non-referral to the statute at the trial level was a calculated strategical maneuver in an attempt to recover common law consequential damages in a case in which the direct damages to the wife victim necessitated the nominal expenditures of twenty ($20.00) dollars in medical expense and five dollars and ninety cents ($5.90) in hospitalization costs. Our conclusion is further confirmed by the fact that neither in the brief nor at oral argument did counsel for the plaintiffs plead ignorance of the law. In fact, it was conceded that "prior to trial there was some mention of proceeding under the common law."

It is a fundamental principle of the common law that a party shall not be heard to complain of an injury which is the direct and necessary result of his own chosen conduct. The doctrine—*volenti not fit injuria*—is still viable in Maine and in this case has the effect to debar the plaintiff wife from a remedy which would otherwise have been open to her. See *Mundle v. Hill Manufacturing Co.*, 86 Me. 400, 407, 30 A. 16 (1894); *Rockland Water Co. v. Tillson*, 75 Me. 170, 178 (1883). We hold that the plaintiffs had a fair trial within the procedure chosen by their legal representative whose conduct at trial is binding on them.

In furtherance of their insistence on appeal that the common law rule limiting recovery of damages in dog bite cases to injuries caused by a dog whose vicious propensity was known to its owner or keeper is no longer supportable in reason in our modern society, the plaintiffs ask us to change the common law and overrule our decisional law. This same request was advanced in *Begin v. Bernard*, supra, but was rejected, this Court referring the modification of the common law to the Legislature.

We agreed that the rules of the common law which are court-made rules may be changed by the court when it becomes convinced that the policies upon which they are based have lost their validity. *Pendexter v. Pendexter*, Me., 363 A.2d 743, 749 (1976). But we are not persuaded that the common law rule requiring knowledge of the vicious nature of one's dog as a condition precedent to liability for its "first bite" is not sound current policy in view of the Legislature's failure to amend the law since our decision in *Begin v. Bernard* over ten years ago.

There was no error below and the entry will be

Appeals denied.

Judgments affirmed.

POMEROY, J., did not sit.