Judge Graham
delivered the opinion of the Court.
Richard Johnson, of Virginia, died in the year 1814, leaving at his death his widow and three children, Ormasinda, Mary Y. and Marshall D., infants. Shortly after his death another daughter was born, and named Sarah. Ormasinda married John M. Hunt, and *343 died leaving one child only, Martha J..Hunt, the con> plainantin this suit. Mary Y. is yet alive, and is nowthe wife of said John M. Hunt. Marshall D. died an infant without issue and intestate, and before the birth of the posthumous child. Sarah, the posthumous daughter, married Plunkett and died leaving two children.
In March 1814, said Richard Johnson made his will, which, after his death, was admitted to record in the county of his residence in Virginia. By the second clause of his will, he gives and bequeaths the whole of his estate both real and personal to his wife until his children arrive at lawful age or marry; “at which time (the will reads) I lend to my daughter Ormasinda two negroes, by name Bob and Nelly, and -their increase during her life and to her heirs forever, and in case of her decease without issue to go to her surviving brother and sister and their heirs. Thirdly, I also lend to my daughter Mary Yates Johnson, when she arrives at lawful age or marries, two negroes, by name Lewis and Betty, to her and her heirs forever, but for want of such heir or heirs, the above negroes, Lewis and Betty and their increase, to be divided equally between her brother and sister and. their heirs. Fourthly, I give to my son, Marshall Durrett Johnson, to him and his heirs forever, two negroes,by name Aylett and Charlotte and their issue, but in case my son should die without lawful heir, it is my will that the above negroes Aylett and Charlotte and their issue should be divided between my surviving daughters or their heirs: provided any of those negroes, above named, which are lent to my daughters and given to my son should die before they get them into possession, the value thereof is to be made up out of my estate equal to those that may be living: provided my wife should now be pregnant with a son or daughter, it is my will that he or she should share equally with the rest of my children in the same manner as specified above. Fifthly, the balance of my estate, both real and personal, I bequeath to my wife during her natural life, and at her death such estate and their increase to be equally divided among my three *344 children, Qrmasinda, Mary Y. and Marshall D. Johnson, or the survivors or their heirs. It is" understood that the part which my daughters may have at the decease of my wife is lent, as before expressed, unless they should die leaving heirs. In that case it is given to their heirs forever.”
In the construction of wills the intention of the testator must be carried out unless it be against law; and if there be repugnant clauses, the latter must prevail. Words, or even clauses, may be transposed when such transposition is necessary to make sense of the provisions of the will. Every clause shall be so construed as to give effect thereto, if piacli- ' cable, without ■contradiction.
The widow of the testator has also died, and this suit is brought to obtain a proper distribution or division of the estate. The only matter of controversy is the extent of the interest of the heirs of Sarah, the posthumous daughter, in the property according to the will of her father.
On the part of the complainant it is insisted that she is not entitled to any portion of the property given to Marshall D. Johnson, nor to any part of the residue of the estate mentioned in the fifth clause of the will, whilst, on the part of her heirs, it is claimed that the will gives to her, since the death of said Marshall D. Johnson, one equal third part of the estate.
Many rules laid down in the authorities for the construction of wills have been quoted in the argument of this cause. They may, however, so far at least as this case is concerned be summed up in a few general rules: “Find out the intention of the testator, and that intention must take place, unless contrary to the rules of law.” “If there be two clauses in a will so totally repugnant to each other that they cannot stand together, the latter shall be received and the former rejected.” “Words ■ and even-clauses in a will may be transposed, when such ■transposition is necessary to make sense of the other ■provisions of the will, or to cany out its intent.” “Ev- ■ ery clause shall be so construed, if it be practicable, as to make the whole stand together without being contradictory.” With these rules before us, we must endeavor to ascertain the intent of the testator. In the .proviso to the fourth clause, the testator says it is his will that the posthumous child “should share equally with the rest of my children in the same manner as specified above” It is urged that by this expression he •meant that he or she should only receive two negroes *345 of equal value with those given to the other children, subject to the same limitation in case of death without issue, &c. We do not think that such was the intention. If he intended that this posthumous child should share equally with his other children in the estate devised to them in that clause, then that portion of his estate given to them would have to be divided into four instead of three equal parts. We think such was not his design, nor is it so argued by the counsel. How shall we arrive at the conclusion that he intended to give this child two negroes? There is nothing in the clause so indicating unless it be the words “share in the same manner.” These words we suppose were used by him to indicate, not that she should take only two negroes, but to show the manner in which she should hold her portion of the estate. He clearly intended equality. If the words “in’my estate” had followed immediately after the word children, there would be no doubt that the will should be so construed as to give her one equal part in the whole, unless that construction is necessarily restricted by the fifth clause. We think the will should be construed as if those words had been so inserted, and that the testator by that clause designed that all his children living, and to be born, should share equally his whole. estate, and that if the posthumous child should be a daughter, then her portion is lent to her in the samé manner as her sisters take, but if that child should be a son, then a poi'tion is given to him in the same manner as to the other son. The testator seems to manifest a peculiar anxiety for equality. If the two negroes given to each of his children should happen to die before the child marries or arrives to the age of twenty-one years, that child is not to lose any thing by reason of the death of the slave. On the contrary the value of the slave so lost to his child, is to be made up from other portions of his estate to equalize him or her with each of the others. If the clause or proviso in favor of the posthumous child had not been inserted until after the close of all his devises and bequests, there would be *346 no room for controversy, that in that case she would have taken, under the will, an equal fourth part of his estate, all the children being alive at-the time of distribution, or if dead, leaving children to take the place of the deceased child. It seems to us that no violence would be done to the will, but that on the contrary the intention of the testator would be effectuated by such transposition.
A case o£ the transposition of a clause to give effect to the clearly expressed intention to maintain equality in the division of his estate.
Shy <$• Beck for plaintiff; Robinson ¿¡- Johnson for defendants.
We are satisfied that taking the whole will together, the obvious intent of the testator would be frustrated, unless we construe the proviso in the fourth clause to mean that the posthumous child should take equally with the others in the entire estate; and although he expressly in the fifth clause names his three living children, as the legatees and devisees of the residuum, after the termination of his wife’s life estate, he did so with the belief that in the proviso alluded to, he had sufficiently expressed his intention and wishes in favor of the after born child, and that his will would be understood as if he added that proviso to the fifth as he did to the fourth clause. This view of the will settles also the question as to that portion given to Marshall D., who died, as already stated, an unmarried infant without children, and consequently that the estate of Richard Johnson, deceased, should be divided into three equal parts, giving the heir of Sarah Plunkett, deceased, one of those parts.
The decree of the Circuit Court is in accordance with this opinion and is therefore affirmed.