CASE 29—PETITION EQUITY—DECEMBER 30.

# Churchill, &c., vs. Churchill.

APPEAL FROM HARDIN CIRCUIT COURT.

1. The technical legal import of the word " children " accords with its ordinary and popular signification. It does not denote grandchildren. And, though sometimes used with that purpose and effect, there is no warrant for thus enlarging its meaning in construing a will, unless indispensably necessary to effectuate the obvious intent of the testator.

2. It may be regarded as well settled, that such enlarged or extended import of the word " children," when used as descriptive of persons to take under a will, is only permissible in two cases. *First*, from necessity, where the will would be otherwise inoperative; and *second*, where the testator has shown by other words that he did not use the word in its ordinary and proper meaning, but in a more extended sense. (1 *Roper on Legacies*, 69; 2 *Jarman on Wills*, 51, 52; 9 *Dana*, 2; 9 *B. Mon.*, 204; 12 *Ib.*, 115.)

3. See the opinion for a case in which the court is called upon to construe the word children, as used in a will, so as to embrace grandchildren, but refuse such construction.

T. A. MARSHALL, for appellants, cited 2 *Jarman on Wills*, *top pages* 19, 51, 52, 53; 9 *Dana*, 1; 9 *B. Mon.*, 204;

SAMUELS, KINCHELOE, and JENNINGS, for appellee, cited 4 *Litt.*, 349; 12 *B. Mon.*, 115.

JUDGE STITES DELIVERED THE OPINION OF THE COURT. (Judge Wood did not sit in this case.)

This was a petition in equity, brought by Worden P. Churchill against Armistead Churchill and others, to recover one fourth of certain lands and slaves, to which he asserted title under the will of his deceased grandfather, Henry Churchill, deceased.

The defendants, who were children and devisees of the testator, denied the plaintiff's right. The court below decided that he was entitled, and the correctness of that judgment is questioned by this appeal.

The case turns upon a proper construction of Henry Churchill's will; and, inasmuch as both parties refer to and rely upon several clauses of the will as indicating what each claims to be the true construction, it will be necessary to state them in the language of the testator.

After first providing liberally for his wife, and making several specific devises to other children—mentioning previous advancements, and, among others, advancements to Worden P. Churchill, whom he styles his " deceased son," and who was the father of appellee—the testator inserts, in the fifth clause of his will, the following provision for his daughter Lucy :

" I give unto my *son*, Armistead H. Churchill, in trust for my *daughter*, Lucy Churchill, the following negroes," (naming them.) " Now I wish this legacy given to my *son*, Armistead Henry Churchill, in trust for my *daughter*, Lucy Churchill, to be fully and fairly understood, and upon these conditions : that if my daughter Lucy ever marries, and should have *children* alive at her death, then the following negroes to descend at her death to her *child* or *children;* and if she, my said daughter, marry and die, and leave no *children* or child, then the said negroes and their increase to *revert* back again to my *family*, and be *equally divided between all my children as the law directs;* but should my said daughter, Lucy Churchill, never marry, or leave no children at her death, then it is my desire that she shall have the privilege of giving or devising the above mentioned negroes to any one of my *children* or *grandchildren* that she may think proper so to do. I also further give unto my son, Armistead H. Churchill, in trust for my daughter, Lucy Churchill, the tract of land whereon I now live (describing it;) and should she die, and leave no children at her death, then it is my desire, at her death, that the said tract of land *revert* back to *my children, and be equally divided as the law directs;* but should she die and leave no children, then it is my desire that she may divide it among *them* as she may think right and proper."

The eighth clause has the following bequest in favor of appellee :

" I give to my *grandson*, Worden P. Churchill, son of *my son*, Worden P. Churchill, five hundred dollars, the money to be paid him as soon as he arrives at age or marries."

In the ninth is this devise :

" I also give unto my *grandson*, Worden P. Churchill, *son of my deceased son*, Worden P. Churchill, and also to my *grandson*, James B. Payne, and also to my *grandson*, J. McKinney, who is

the son of my daughter, Eliza Ann McKinney, my tract of land in Owen county, containing twelve to fourteen hundred acres, (describing it,) to them, my three *grandsons*, and their heirs, forever."

And lastly, the testator thus divides the remainder of his ·estate :

"One half to be divided between my *two sons*, Armistead H. Churchill and Alexander Churchill, and the other half I leave to Armistead, in trust for my daughter, Lucy Churchill, and Eliza Ann McKinney, to be divided among *her children* as she may think proper; and if Lucy Churchill die without children, her part to be divided amongst *all my children*."

We have italicized the words relied on as controlling the direction of the property in dispute.

Upon the hearing, it was admitted that Worden P. Churchill, the father of appellee, and son of testator, died in 1830, and that the testator died in 1842, in which year his will was published and admitted to probate.

It was likewise admitted that there were but four children of the testator alive at his death—all of whom, except Lucy, were alive when the trial was had, and parties to the action; and that Lucy—after having married and survived her husband —had died childless and intestate, thus creating the contingency, upon the happening of which her share of the devised property was to be divided.

Appellee rests his claim to a share of the property devised to Lucy upon the fifth clause of the will, which provides for its division among "all the children" of the testator.

It is said in his behalf that the language used in that clause, when considered with the general tenor of the will, and manifest intention of the testator to equalize not only his children, but his grandchildren, indicates very clearly that the word "*children*" was not used in its ordinary sense, but in an enlarged sense, so as to embrace grandchildren as well as children; and that the construction put upon the will by the court below was right, and fully warranted by its context.

For appellants, it is argued that there is nothing in the clause referred to, nor in any other part of the will, indicating in the

least degree that the word "children" was used in any other than its ordinary and popular signification, or that it was intended to denote any other class of persons than the testator's children; and, moreover, that—inasmuch as there are persons answering that description, and the purpose and design of the testator can be effected, and the will made operative, without attaching or imparting to the word "children" any other than its legal as well as popular signification—the well established rules of construction applicable to such cases demand a reversal of the judgment, with directions to dismiss appellee's petition.

The technical legal import of the word "children" accords with its ordinary and popular signification. It does not denote grandchildren; and, though sometimes used with that purpose and effect, there is no warrant for thus enlarging its meaning in construing a will, unless indispensably necessary to effectuate the obvious intent of the testator.

It may be regarded as well settled that such enlarged or extended import of the word "children," when used as descriptive of persons to take under a will, is only permissible in two cases. *First*, from necessity, where the will would be otherwise inoperative; and *second*, where the testator has shown by other words that he did not use the word in its ordinary and proper meaning, but in a more extended sense. About this rule of construction there seems to be no conflict in the authorities. (*Roper on Legacies, vol.* 1, 69; *Jarman on Wills, volume* 2, 51–52; *Phillips vs. Beall,* 9 *Dana,* 2; *Yeates vs. Gill,* 9 *B Mon.,* 204; 12 *B Mon.,* 115.)

Here the testator left living children—a class answering the description furnished by the word "children"—and there is, therefore, no necessity for ascribing any enlarged meaning to the word, so as to make it embrace grandchildren, in order to render the will operative. It is operative without such construction.

If it can be so construed as to embrace grandchildren, it must be because the testator has shown by the use of other words that he did not use the word in question in its legal, ordinary, and proper sense, but in a different and more com-

prehensive and enlarged sense. Are there any words or expressions in the will indicative of such intent?

It is worthy of remark in the outset that the testator has exhibited more than ordinary pains in describing not only the property which he devises specifically, but also in designating the persons to whom it is devised.

Thus, in giving the legacy of five hundred dollars to appellee, whose father's death has been previously mentioned in the will, he describes him as "my *grandson,* Worden P. Churchill, *son of my son,* Worden P. Churchill." Again, in the ninth clause, he describes him as "my grandson, son of my deceased son," and in the same clause he describes other devisees as his grandsons; and in regard to another of them, styles him the son of his daughter. So in respect to the devisees who are his children—sons or daughters—he describes them as such; thus showing that at the time of making his will he had both classes in his mind; but desiring to avoid confusion or mistake, made such specific designation as would leave no room for doubt as to his meaning.

In this regard there is a striking analogy in the present case to the case of *Phillips vs. Beall,* (9 *Dana, supra.*)

In Phillips' will, it appeared from the instrument itself that the testator left both children and grandchildren, and that he referred to both classes, giving to each their proper designation. This court, which was called upon to construe the word " children," so as to make it embrace " grandchildren," refused such construction, and referred to the fact just mentioned as strongly conducing to show that the testator did not confound the two classes, either in idea or expression; but by using them in the connection named, indicated that he intended them in their ordinary and proper sense.

There is also a peculiarity in the fifth clause of this will, which, in our judgment, denotes not only that the testator had fully considered the character and effect of the restrictions placed upon the devises for the benefit of his daughter, but that in designating the class which was to take upon the happening of the contingencies which have actually occurred, he intended to be as specific and distinct as he could be, and used

the. words descriptive of that class not only in their proper and ordinary, but legal sense.

In regard to the slaves, he directs that Lucy should have the power of disposing of them, by gift or devise, among any of his (the testator's) *children* or *grandchildren* that she may choose, *provided* "she should never marry or leave no children at her death." But in regard to the land, she is only permitted to divide that among "*the children*" of the testator. What reason may have prompted this distinction between the slaves and land we need not inquire; nor is it material, except for the purpose of showing the care and deliberation exercised by the testator in the selection of apt terms to express his intentions.

It is said, however, that although the words "grandchildren" and "children" are both used by the testator in other clauses of the will, and in such manner as to indicate very clearly that he had distinct intentions therein in reference to each class, and avoided confounding or blending them into one, still that the expressions in the fifth clause, immediately connected with the word "children," and referring directly to the devise of the property in dispute, indicate as clearly that it is therein used in an enlarged sense, embracing grandchildren as well as children, and not in its legal and popular sense.

Upon the happening of the contingencies on which the devise over of the slaves is to take effect, the will directs that "then the said negroes and their increase to *revert* back again to my *family*, and *be equally divided between all* MY CHILDREN, *as the law directs.*"

The devise over as to the land is, "that the said tract of land revert back to MY CHILDREN, and *be equally divided, as the law directs.*"

The grounds taken for appellee are, (1) that there is a manifest intention throughout the will to equalize the children and grandchildren of the testator, making the latter occupy the position of their parents; (2) that the direction that the property should *revert* to his *family*, and *be equally divided* between *all of his children*, indicates that the testator intended to include all of his family, grandchildren as well as children, and to exclude none; and (3) that by directing a division to be made

"as the law directs," he, in effect, placed all of his devisees in an attitude with respect to that property that they would have occupied had he died intestate.

From what part or parts of the will the intention to equalize the children or grandchildren is gathered, we have been unable to discover. Certainly there is no expression of the testator to that effect; and in the absence of such expression, or words tantamount thereto, or some valuation by the testator of the several previous advancements and specific devises, or evidence of such value outside the will, we feel compelled to say that the assumption that the testator intended to make equal distribution among all his children and grandchildren, is not warranted by the record.

Neither have we been able to perceive any solid foundation for the other positions.

It cannot be doubted that the words "*revert back* to my *family*," and "be equally divided as the law directs," if unaccompanied by other controlling and restrictive words, would seem to indicate that the testator designed the property should, on the happening of the contingencies named, pass as if by descent; but these words on which so much stress is laid, are not unrestricted or uncontrolled. On the contrary, they are expressly limited in their effect, and that, too, by the emphatic and unmistakable designation of the class amongst whom the property was to be thus divided, to-wit: "all of his *children*."

The testator, with that care which seems to have distinguished the preparation of the entire instrument, has, we think, left in no clause of his will any room to doubt whom he designed to be the recipients of his bounty, nor the mode in which the property should be divided.

Suppose the will had declared that the property should revert back to his family, and be equally divided between "all of his *daughters* as the law directs," or between "all of his sons," or between "all of his grandsons," with the same direction as to the mode of division, would it be seriously contended that the use of the word *family*, a word of doubtful and uncertain legal import, and of the words "to be divided as the law directs," words denoting nothing more than the proportions

each recipient was to have, should determine the class of persons to receive, or change the direction of the property, when the will designates the class?

If not, what propriety is there in contending that similar words, in a like connection, should control here?

The word " children," as we have seen, has a meaning as specific and distinct, legally and ordinarily, as the words " daughters," " sons," or " grandsons;" and, as has been said, it is not necessary, in order to render the will operative, to vary that meaning.

Why is an intention to use the word in a different sense than that in which he had repeatedly used it in the same instrument, both before and after the clause in question, to be ascribed to the testator?

In other clauses he had used the words " son," " grandson," " children," and " grandchildren," in their proper popular and legal sense, and no question is made as to what he designed by their use; and what reason there can be for supposing that the testator in this particular clause—about which, as we have seen, he appears to have taken more than ordinary pains to express his intention and make himself understood—wholly overlooked and ignored the distinction he had kept up between similar words, confounded their meaning, and used the word " children" in reference both to the land and slaves, in a sense opposed to its natural, popular, and legal sense, and opposed, too, to the sense in which he used it in previous and subsequent clauses of the will, we confess ourselves unable to comprehend.

It seems to us, therefore, that there is nothing in the will from which we are authorized to assume that the testator used the words " all my children," in any other than their legal and popular sense, and that the circuit court erred in imparting to them any other effect, so as to embrace appellee as one of the devisees in remainder.

The case of *Hughes vs. Hughes supra*, does not in the least militate against this conclusion.

In that case it was apparent from the context and language of the will, which we need not now stop to repeat, that the word " children" was used by the testator as synonymous with

the word "heirs;" and the application of the general rule, already referred to, to that case, was evidently proper. The language of the court in that case would exclude this will from the rule relied on; for it is expressly said, " that the word 'children' is construed not to embrace grandchildren, unless there be something in the will which manifests the testator's intention, by the use of the word, to include not only his children, but also his grandchildren."

Wherefore, the judgment of the circuit court declaring Worden P. Churchill entitled to an interest in the estate of Lucy Slaughter, as devisee in remainder under the will of Henry Churchill, deceased, is *reversed*, and cause remanded with directions to dismiss his petition.