· CASE 12—PETITION EQUITY—NOVEMBER 23.

# Chenault's Guardian v. Chenault's Executors.

#### APPEAL FROM MADISON CIRCUIT COURT.

1. DEATH OF DEVISEE BEFORE MAKING OF WILL—Where a devisee, whether he be a sole devisee or one of a class, is dead at the making of the will, or thereafter dies before the testator, leaving issue who survive the testator, such issue takes the estate devised as the devisee would have done if he had survived the testator, unless a different disposition is required by the will; and extrinsic evidence is not competent to show the testator's intention in that respect.

   Following certain special bequests, was this provision in a will: "The remainder of my estate I desire equally divided between the children of my brothers and sisters, except in the case of my two living sisters. I desire the portion going to their children go to my sisters or sister, as the case may be." A son of one of the brothers of the testator had died before the making of the will, leaving a son, who seeks by this action to recover the share of the estate his father would have received if living at the death of the testator. *Held*—That he is entitled to recover.

2. OVERRULED CASE—The case of Sheets v. Grubbs, 4 Met., 339, is overruled.

C. F. & A. R. BURNAM FOR APPELLANT.

JOHN BENNETT FOR APPELLEE.

Record and briefs not accessible.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

In 1885, David C. Chenault died, leaving a will dated September, 1878, to which was in June, 1885, added a codicil. Following large bequests for sustaining Baptist preaching and to the Southern Baptist Theological Seminary, is this provision in the will: "The remainder of my estate I desire equally divided between the children of my brothers and sisters, except in the case of my two living sisters, Elizabeth Bennett and Nancy Munday. I desire the portion going to their children

go to my sisters or sister, as the case may be, for their
or her sole and separate use, both to enjoy and dis-
pose of by will or otherwise.'' By the codicil the exec-
utors therein named were directed to reduce the whole
estate of the testator to cash ; and farther provision
was made in regard to the shares intended for Mrs.
Munday and her children that need not be here set
out in full.   There were two brothers and three sisters,
of whom Josiah P. Chenault, Waller Chenault, Sr.,
and Mrs. Oldham were dead at date of the will, and
Mrs. Bennett and Mrs. Munday survived the testator.
This action was instituted by the guardian of Waller
W. Chenault, grandson of Waller Chenault, Sr., and
son of Waller Chenault, Jr., who had died previous to
execution of the will, against the executors and other
devisees of the residuary estate, to recover for him one
thirty-third part thereof ; and the question presented
is whether he is entitled, under the clause quoted, to
the share his father would have received if living at
death of the testator.

The evidence offered for the purpose of proving, by
oral declarations of testator, he did not intend him to
have any part of the estate, was properly rejected ; for,
according to an established rule, the intention in that
respect must be ascertained from the proper meaning
of words of the will, and not from extrinsic evidence.

As the residuary devisees take *per capita*, the chil-
dren of each brother, being more numerous, will neces-
sarily receive, as a class, more of the estate than those
of either sister.   But, although such result must have
been foreseen by the testator, it does not have any
bearing upon the question before us, nor can that be

Chenault's Guardian v. Chenault's Executors.

satisfactorily determined from any thing else in the will or codicil. Consequently, it must be decided according to statutory rules of construction.

At common law, the import of the term "children," used as descriptive of persons to take under a will, could be enlarged so as to embrace grandchildren, in two cases only : first, from necessity, where the will would be otherwise inoperative; second, where the testator had shown by other words that he did not intend to use the term children in its proper actual meaning, but in a more extended sense. (Roper on Legacies, vol. I., 49.) The same rule of construction prevailed in this State, without question, before there was statutory regulation on the subject. (Phillips v. Beal, 9 Da., 1.) And has since been recognized. (Churchill v. Churchill, 2 Met., 466 ; Sheets v. Grubbs, 4 Met., 339.)

The rigid enforcement of that rule, in connection with the doctrine of survivorship, often resulted in defeating the intention of testators to provide for those most in need of their bounty, and for whom they were in fact desirous of making provision. Thus, in case of a devise to children as a class, the death of one or more of them before death of the testator formerly enured to the benefit of the survivors coming within the description, to the exclusion of descendants of those deceased, merely because the testator inadvertently failed to provide expressly and in apt terms to the contrary.

Another mode of thwarting the real intention of testators, previous to legislative interference, was the lapse of the common law, whereby, in case of death of

a designated devisee before that of the testator, the property devised was diverted from his issue, and fell, if personalty, into the residuum, or, if realty, back to the general estate.

To remedy, in some measure, these defects in the law, and as said in Yeates v. Gill, 9 B. M., 203, "to promote equality in the distribution of estates, and to subserve the probable intention of testators, under a change of circumstances not expressly provided for, only, as it might be presumed, because express provision was not understood to be necessary," the following statute was passed in 1839:

"That hereafter legacies and devises to children and grandchildren shall not lapse by the death of the legatees or devisees before the testator, provided such legatees or devisees shall have children living at the death of the testator, who would have taken as heirs by descent, or as distributees of the legatee or devisee." (Loughboro's Digest, 400.)

It was contended in argument, in Yeates v. Gill, that the use of the term "lapse" indicated intention by the Legislature to apply that statute only in case of a devise to a person specially named, who died before the testator, but this court held it was passed as well in view to the case of one of a class of devisees dying, and that under it, children of such deceased devisee were invested with the same interest as the parent would have taken if living at the death of the testator. It is, however, proper to say the question did not arise, in that case, what would have been the effect under the statute of the death of the devisee before the making of the will.

But, although the object of that statute was to thereafter prevent both the survivorship and lapse of the common law, and thus allow a construction of wills more in harmony with the usual and natural feelings and views, and, therefore, presumed intention of testators, the change was not deemed by the Legislature radical enough, and, hence, the two following sections were made parts of the Revised, as they now are of the General Statutes:

" When a devise is made to several as a class, or as tenants in common or joint tenants, and one or more of the devisees shall die before the testator, and another or others shall survive the testator, the share or shares of such as so die shall go to his or their descendants, if any; if none, to the surviving devisees, unless a different disposition is made by the devisor. A devise to children embraces grandchildren when there are no children, and no other construction will give effect to the devise." (Section 1, article 2, chapter 50.)

" If a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survives the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will." (Section 18, chapter 113.)

It will be seen the statute of 1839 is so changed in express terms, by the latter of the two sections quoted, that the issue of a devisee, or legatee, who may be dead even at the making of the will, takes the estate as such devisee would have done if alive at death of the testator, and if that section was applied in this case, the

infant plaintiff would be clearly entitled to a share of the estate. This court has, however, decided it was intended specially to prevent lapsed legacies, and relates to devises made to a sole or several devisee, not to those of a class, to whom the other section intended to prevent survivorship more properly applied ; but, as said in Dunlap v. Shreve, 2 Duvall, 334, "these two kindred and simultaneous enactments should be considered *in pari materia*, and construed in juxtaposition as one entire expression of legislative intent.

The statutes on descent and distribution, chapter 30, General Statutes, make that disposition of the estate of a person dying intestate which by common consent he ought to have made, and by common understanding he would have made. Hence, upon the death of such person his estate passes by law to his children living and to the descendants of those who are dead.

The two sections quoted, intended as statutory rules of construction, practically operate to make disposition by law of such portions of the estate of a person dying testate as he failed to fully and clearly dispose of himself, and that it is fair to presume the Legislature intended should pass in the same manner and to the same persons it would have done if there had been no will. For, whether a person dies intestate as to the whole or part of his estate, it is to be presumed, in the absence of a clear expression to the contrary, he desired an equal division *per stirpes* between his living children and the descendants of those dead, no matter when they died ; and as it was the object of neither of the sections we are considering to defeat, but of both, one as much as the other, to effectuate the probable

design of testators who may not have made their intention clearly understood as to persons who are to take under their wills, it seems to us no construction should be given to either that would exclude any within the natural and usual range of parental affection and solicitude, especially as those to be generally prejudiced thereby are infants.

In the case of Churchill v. Churchill, 2 Met., 466, the question was upon this clause of a will: "If Lucy Churchill dies without children, her part is to be divided amongst all my children." And it was held that the son of one of the children who had died before the will was executed did not take a share because the word children could not, at common law, be made to embrace grandchildren; but no reference was made in that case to the two sections quoted.

In Sheets v. Grubbs, 4 Met., 339, the devise was to the children of the testator's sister, and the question was whether the daughter of one of them who died before execution of the will was entitled to any part of the estate; and it was held she was not, because it could not be presumed the testator intended to give any portion of his estate to a person he knew was not living when he made his will. Still, it was said if the devise had been to the children by name, or to a given number of children, the issue of such as were dead at the making of the will would have taken under the statute.

It seems to us the conclusion was reached in that case by an erroneous process of reasoning, for the self-evident fact the testator in that particular case did not mean to devise any part of his estate to a

child known by him to be dead by no means involves
a presumption he intended to disinherit the issue or
descendant of such deceased child. And the proper
inquiry in that case, as in every such one, is whether
there is any reason for a difference in the construction
and application of the two statutes, which is satisfac-
torily answered in Dunlap v. Shreve, 2 Duv., 334, thus:
"Then carefully considering the reason and object of
these two enactments against lapse and survivorship
when there may be 'issue' or 'descendants,' and allow-
ing a liberal and consistent interpretation of the letter
of that against survivorship, we are strongly inclined to
the conclusion that, to give full effect to the legislative
purpose, a devise to 'children' as a class, unqualified
by the context or by any extraneous fact, should here
now be construed as a devise to issue, heirs or de-
scendants; and on this hypothesis, the common law
rule of construction should be inverted so as to require
some other proof that by 'children' the testator in-
tended the devise for such only as were living when he
published his will;" for there is no necessity for mak-
ing the words, "shall die before the testator," refer
merely to such as die subsequent to the date of the will
where they can be fairly construed to embrace as well
those who die before.

It is true the words, "is dead at the making of the
will," are used in section 18, chapter 113, but it seems
to us, with the same consistent purpose to change the
common law rule, and relieve 'issue' or 'descend-
ants' from the harsh operation of the doctrine of sur-
vivorship, the following words are added to the other
section: "A devise to children embraces grandchildren

when there are no children, and no other construction will give effect to the devise."

In our opinion, the construction given to the statute in Dunlap v. Shreve is proper, and the case of Sheets v. Grubbs should be overruled. It therefore follows that the issue or descendants of those children of the testator's brothers and sisters, who were dead at the death of the testator, whether they died before or after the will was executed, are entitled to the respective shares of the estate which their several ancestors would have taken if alive ; and as Waller W. Chenault has a right to the share that his father would take if alive, the judgment of the lower court is reversed, and cause remanded for further proceedings consistent with this opinion.

Judge Pryor not sitting.

------

[This case was pending on a petition for rehearing, and for that reason was not published with the other cases of January Term, 1887.]