# Perkins et al. v. Wilson et al.

(Decided December 10, 1929.)

HUBBARD & HUBBARD for appellants.

LUKINS & JONES for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

Elam Perkins died testate in January, 1929. His will was thereafter probated and controversy arose respecting its interpretation. This action was instituted by the executor and certain beneficiaries against the other beneficiaries for a correct construction of the will. Perkins was married, but had no children. His wife, mother, two brothers, and five sisters survived him. One sister had died in 1893, leaving as her heirs one child, James F. Howell, and one grandchild, Lucy Jane Wilson, the daughter of a deceased sister of James F. Howell. The will was a holographic one, and was written a few days before testator's death. The second clause provided that the wife should have one-half of the estate to do with as she pleased. In the same sentence it was also provided that the wife should have, if she wanted it, the home with its contents, the automobile,

etc., which were valued at $17,500. If the wife did not want the property last enumerated, it was to be sold. A special bequest was made for the benefit of Elam M. Perkins, Jr., a grandnephew and namesake of the testator. Special provision was made also for one sister, Mallie, who was to have testator's interest in the old home place and the sum of $500 in cash. A brother, A. L. Perkins, was to have $1,500, "for favors rendered me." A trust fund of $10,000 was set apart for the benefit of testator's mother during her life, and at her death it was to be "divided equally between my brothers and sisters." The sum of $500 was left to his nephew James F. Howell, and a like amount to Lucy Jane Wilson, niece of Howell, with the provision that if either of them died before testator, the surviving one should have the $1,000. The will provided that the remaining one-half of the estate should be divided equally among the testator's "surviving brothers and sisters or their heirs." The circuit court held that if the widow elected to take the home and contents and other personalty mentioned in the will, it should be charged against her. The widow had an option of taking the house and contents, automobile, etc., but if she did so it had to be charged against her one-half of the entire estate at the valuation of $17,500 fixed by the will. If she elected not to take the property, it was to be sold and added to the total value of the estate. The circuit court further held that James F. Howell and Lucy Jane Wilson, as the only heirs of the deceased sister of Elam Perkins, participated with his living brothers and sisters in the distribution of the one-half of the estate left to them. The appeal is prosecuted by the widow and brothers and sisters, contending that the widow should take one-half of the estate *and* the home and contents, and that Lucy Jane Wilson and James F. Howell are excluded from sharing in the other one-half of the estate to be distributed to the surviving brothers and sisters, or their heirs.

The argument as to the rights of the widow involves a determination of the question whether the optional devise of the home is supplemental or substitutional; that is to say, whether it is in addition to the devise of one-half of the estate, or substituted for the portion thereof to the extent of $17,500. The question is not entirely free from difficulty. The intention of the testator is the controlling consideration in construing a will, and, as has been decided in Prather v. Watson, 187 Ky.

709, 220 S. W. 532, if an intention to charge the beneficiary with the value of a special devise is apparent from the whole will, the intention must be given effect. In the case cited it was held that the devise of certain stock at par value evidenced an intention to make a substitutional bequest to the extent of the par value of the stock. Here the will devised one-half of the estate to the widow. But such is not the case respecting the home and contents and automobile valued at $17,500. The widow was to have that property if she wanted it, and the fact that the testator made it optional with her, and fixed a value upon it, excludes the idea that it was to be in addition to the other bequest. There would be no reason at all for supposing that the widow might reject it, if she did not have to relinquish something else in order to take it. Under the peculiar phraseology of the will we are constrained to the conclusion that in making distribution to the widow of one-half of the estate, the home and contents and other personal property mentioned in the will, if accepted by her, should be charged at $17,500, the value thereof specified in the will.

It is earnestly argued for the appellants that the words "surviving brothers and sisters or their heirs," as used in the will when devising the other half of the estate, did not include the children of the deceased sister of Elam Perkins. To meet the contention that by including "their heirs" the testator meant to embrace the heirs of his deceased sister, it is suggested that those words were intended only to include the heirs of any brothers or sisters surviving the testator, but dying before the date of distribution, or possibly it referred to those living when the will was written, who might die before the death of the testator. In Ruff v. Baumbach, 114 Ky. 339, 70 S. W. 828, 24 Ky. Law Rep. 1167, the provision of the will to be construed by the court was a residuary clause by which property was devised for life to a widow, and, at her death, to be divided equally between his children *then living*. It was insisted that the words "children then living" manifested an intention on the part of the testator to exclude children not living at that time, and necessarily their representatives, because no provision was made for them. Following the cases of Smith v. Miller, 47 S. W. 1074, 20 Ky. Law Rep. 910, and Evans v. Henderson, 68 S. W. 640, 24 Ky. Law Rep. 363, the court held that notwithstanding the language of the testator was limited to the children then living, it in-

cluded the heirs of children that had died. These cases are sought to be distinguished by the circumstances that in them the devises were to living children, or children then living, whilst in this case the bequest is to the sur· viving brothers and sisters. We can see no reason for such a distinction. Chenault's Guardian v. Chenault's Ex'rs, 88 Ky. 83, 11 S. W. 424; Sloan v. Thornton, 102 Ky. 443, 43 S. W. 415, 19 Ky. Law Rep. 1511. The objects of testator's bounty, in both instances, were in the same class, and if emphasis should be given to the word "surviving" in one will, or to the words "then living," in the others, it would exclude some of the favored class whether they were brothers and sisters or children. It will be noted that the conclusions in those cases were not rested on the relationship of the beneficiaries to the testator, but upon a construction of the language employed in the will. It was held that the use of such words as "living" or "then living" did not manifest an intention to exclude from the testator's bounty the descendants of any of the class who may have died. The heirs were entitled to stand in the shoes of the ancestor in the division of the estate. Carter v. Carter, 208 Ky. 291, 270 S. W. 760. It may be said that the special bequest of $500 made to each of these children was all that the testator intended for them to have from his estate. Yet when he came to dispose of the remainder interest in the $10,- 000 trust fund, in which only a life estate was given his mother, he directed that it should be "divided equally among his brothers and sisters." Again, the idea of a special bequest being exclusive of any further interest in the estate is rebutted by the fact that special provisions were made for the benefit of one brother and one sister, both of whom admittedly share in the distribution of the residuary estate. We do not deduce from the use of the word "surviving" in the one sentence, and its omission in the other, that any distinction was meant to be made among the brothers and sisters, or their heirs, in the distribution of the estate. It was doubtless the intention of the testator to leave his property to his brothers and sisters who survived him and to the descendants of any that had predeceased him.

The considerations suggested, and the authorities cited, lead us to the conclusions reached by the circuit court.

The judgment is affirmed.