### Bowman et al. v. Morgan.

(Decided December 19, 1930.)

654

DODD & DODD and HUSTON QUIN for appellants.

KIRBY & KIRBY for appellee.

Opinion of the Court by Chief Justice Thomas—
Affirming.

Mrs. Mary J. Callahan died in 1924 a resident of Jefferson county, Ky. On November 26, 1910, she executed her will, consisting of fifteen items. Following that, and prior to her death in the same year, she executed a codicil thereto, consisting of eight clauses or items. The will and codicil were duly probated after her death in the Jefferson county court. At the time she executed her testamentary papers, and perhaps also at her death, she had ten children, six sons and four daughters, one of the latter being the appellant, Mary P. Bowman, who was the mother of some children, one of whom was and is the appellee, Mary B. Morgan, who, of course, is a grandchild of the testatrix.

This equity action was filed in the Jefferson circuit court by the latter against her mother, and the trustee under the will, to obtain a construction of it and its codicil in so far as the remainder interest of plaintiff as a devisee or legatee of the testatrix was concerned in and to certain items of property wherein plaintiff, eo nomine, was devised or bequeathed a remainder interest after the death of her mother, the appellant and defendant, Mary P. Bowman. The court adopted the interpretation contended for by plaintiff, and entered a judgment accordingly, from which defendants prosecute this appeal.

The will and codicil are each quite lengthy, and we have concluded, for the purposes of this case, to not incorporate them in haec verba in this opinion, since we also conclude that such a course is not essential to an understanding of the questions involved or our determinations of them. The testatrix made one of her sons trustee of all of the interest involved in this litigation, and also, perhaps, of all of her property, and in some of the first nine items of her will she directed that her trustee pay the income of the particular property involved in such items to her daughter, the defendant Mary Bowman, and at her death the same property should go to the plaintiff Mary B. Morgan, her granddaughter (naming her), and in some of the items (as well as in others following item 10 to be hereafter considered) she expressly stated: "It being my desire to prefer my granddaughter (Mary B. Morgan) to some extent in the disposition of my property." In others of

the first nine items of the will the testatrix provided for the income of designated property to be paid by the trustee to her daughters during their lives and in remainder to their "children," if any survived their mother. In some of such items provision was made for the failure of children upon the death of a daughter (the first taker), while in others no such provision was made.

Item 10 of the will is in these words:

"After the expiration of ten years from my death, if any of my children should then be dead, or should thereafter die, the portion of the estate from which said child received income during life under the provisions of this will, shall vest in his or her child or children or their descendants, and the corpus be distributed; and such as die without children or descendants, such share after ten years, shall be distributed to such of my children or descendants as shall be named by last will and testament, and in default of such designation by will, then the share of such shall vest in equal shares in those of my daughters as then survive, and the descendants of such daughter as may then be dead, excepting, however, from any distribution, the shares of elevator stock herein devised, so long as my son Warren shall remain a stockholder in said Company in his individual right.

"And further, that no distribution whatever shall be made of any of the corpus of the estate within ten years from the probate of this will; and further that in the payment of income and in the distribution of the corpus, the charges herein made against certain of my children shall be first deducted from the principal of such share, and placed in a fund to be invested and expended by my Trustee from time to time for the use of any of my children who may be unable to earn a livelihood by reason of sickness or disability, and have no other sufficient means of support, and after fifteen years to be under the provisions of this will, as provided in item 9."

Item or clause, 5 of the codicil is in these words:

"Where I have devised any real estate, or share in real estate, to Mrs. Mary P. Bowman with remainder to her *children*, she may, with the approval and conjunction of said Trustee, sell her interest in same,

but the proceeds shall continue in Trust, as directed by my Will; if sold the proceeds of sale, or if not sold, the remainder interest of her share may be devised by her Will as she pleases.'' (Our italics.)

The whole question in this litigation is the contention made by learned counsel for defendants that item 10 of the will and item 5 of the codicil should be given the effect to strike down all of the remainder interest of plaintiff given to her in remainder, by name, in items among the first 9 of that instrument, and to put her upon a par and upon the same level with her brothers and sisters taking as a class designated as ''child,'' and thereby reducing her interest given to her by name to an equal share with her brothers and sisters; and also that the same items (10 of the will and 5 of the codicil) in certain contingencies therein mentioned empowered Mrs. Bowman, the daughter of testatrix and the mother of plaintiff, to dispose of by her will the remainder interest of plaintiff given to her *by name* in some of the items composing the first nine of the will as hereinbefore referred to. The court, as we have seen, discarded that contention, followed by this appeal.

The contention is made and bottomed solely and alone upon the theory that items 10 of the will and 5 of the codicil are irreconcilably inconsistent with the remainder devises to plaintiff *by name* in the first nine items of the will, and, appearing in the testamentary documents, they must be regarded as the last expression of intention, and should prevail. Learned counsel for defendants, of course, combat that contention, and we are called upon in the solution of the question to apply established and recognized rules for the interpretation of wills. The first one of those rules, firmly established and universally prevalent, is that the intention of the maker of a will as gathered from its entire contents from its beginning to its end shall prevail, provided such intention is one not against law or public policy. That rule has sometimes been designated as the ''Polar Star'' for the guidance of courts in the interpretation of wills. It is not disputed by learned counsel for defendants in this case, and we will not incumber the opinion with an extended list of cases so thoroughly establishing it, but content ourselves with appending a few of the latest ones from this court, which are: Jones v. Jones, 198 Ky. 756, 250 S. W. 92; Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. (2d) 1020; Liberty Bank & Trust Co. v. Bimbas,

227 Ky. 643, 13 S. W. (2d) 1001; Perkins v. Wilson, 232 Ky. 83, 22 S. W. (2d) 416, and others referred to in those opinions.

Another rule of equally universal application, and so universally followed, is that the "intention" to be ascertained from the whole will is the one expressed by and through the words employed by the testator and not the one that he may have entertained but did not express. Wickersham v. Wickersham, 174 Ky. 604, 192 S. W. 688, Futrell v. Futrell's Ex'r, 224 Ky. 814, 7 S. W. (2d) 232; Walker v. Irvine's Ex'r, supra; Darch v. Darch's Ex'r, 232 Ky. 666, 24 S. W. (2d) 558, and others mentioned in those opinions. Another rule of similar recognition is that a codicil should be considered as an addition to, modification of, and as a part of, the will, and construed in connection therewith so as to not effect an alteration of the will to which it is added, "except by clear language indicating such purpose." The Jones case, supra; Norton v. Moren, 206 Ky. 415, 267 S. W. 171; Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90, and others mentioned in those opinions.

A subordinate and last resort rule, and which is the one invoked and relied on by learned counsel for defendants, is, that a later clause in a will which is in irreconcilable conflict with prior ones will prevail over the latter, upon the theory that it embodies the last expression of the testator's intention. It, and the circumscribed conditions permitting its employment, are thus stated in the text of 40 Cyc. 1417: "It is a well-settled rule that where there is an irreconcilable conflict between two clauses of a will the later clause will prevail as being the latest expression of the testator's intention, even though it results in rendering the will invalid, unless it is inconsistent with a reasonable intendment as to which of the conflicting clauses is most likely to effectuate the intention of the testator. This rule, however, applies only where the later clause is as plain and decisive as the first, and refers to the same subject-matter, and there is a failure of every attempt to give to both clauses such a construction as will render them equally effective, and it is impossible to determine which clause the testator intended to prevail; and even then the earlier clause will be disturbed only so far as it is necessary to do so in order to give effect to the subsequent clause."

In different language, but to the same effect, it is thus stated in the text of 28 R. C. L., p. 208, sec. 169:

"The rule which sacrifices the former clause in a will because inconsistent with a later one is never applied except upon failure to give such construction as renders the whole will effective and allows each provision to stand. . . . The courts will not disturb the first provision further than is absolutely necessary to give effect to the second, and the first clearly expressed purpose of a testator in his will is not to be overborne by subsequent modifying directions therein, that are ambiguous and equivocal, and may justify either of two opposite interpretations." As so circumscribed, and no farther, it has been approved and applied by this court. Some of the cases in which it was done are: Lewis v. Reed, 168 Ky. 559, 182 S. W. 638, 640, Ann. Cas. 1917D, 1155; Watkins v. Bennett, 170 Ky. 464, 186 S. W. 182, 185; Muir v. Howard, 178 Ky. 51, 198 S. W. 551; Cecil v. Cecil, 161 Ky. 419, 170 S. W. 973, and others referred to in those opinions.

In the Reed case the limitations of its application are thus stated:

"Courts will always construe a will so as to harmonize its different provisions and give effect to each if possible. To this end they will not disturb the first provision further than is absolutely necessary to give effect to the second. It is only where the provisions are absolutely irreconcilable that the latter will be preferred and will prevail over the former. Jacob v. Jacob, 4 Bush, 115; Hunt v. Johnson, 10 B. Mon. 342; Howard v. Howard's Ex'r, 4 Bush, 497."

In the Watkins case, after announcing the rule that "the entire will and all of its provisions will be looked to" in arriving at the intention of the testator, the opinion said:

"Each clause of a will must be read in connection with every other clause, and the intention of the testator must be gathered from a consideration of the whole of it (citing cases). It is apparent that a court will not be justified in picking out a clause or two of a will, and from them determine that a construction to be placed upon it or them from their language should prevail in spite of what the other clauses of the will may provide."

Outlining the same undeviating canon of construction, the text in R. C. L., supra, p. 217, sec. 176, says:

"In construing a will effect should be given to every word and clause if not inconsistent with the general intent of the whole will when taken togther. It is presumed that every word is intended by the testator to have some meaning, and no word or clause in the will is to be rejected to which a reasonable effect can be given. Where two constructions are suggested, the one disregarding a word or clause of the will, and the other giving effect to the will as a whole, the latter must be adopted. No part of the instrument is to be discarded unless in conflict with some other part, in which case that part will be enforced which expresses the intention of the testator. Provisions apparently in conflict should be reconciled if this can be reasonably done."

There are yet other rules for the interpretation of wills to which resort may be had in order to arrive at the intention of the testator from the language he employed in his entire will, but it is not essential that we refer to them, and we will now proceed to determine the contested question in the light of the established rules we have above referred to.

It is perfectly clear, and it is admitted by counsel for defendants, that Mrs. Callahan gave an absolute estate in remainder to plaintiff, Mrs. Morgan, by name, in some of the first nine clauses of her will, which was preceded by a life estate in defendant, Mrs. Bowman, the mother of plaintiff. She likewise gave in some of such items an estate in remainder to the "children" of Mrs. Bowman without naming any of them, and in the same or other items she gave in remainder to the children of her other daughters without naming them. She also had not, up to the time of writing item 10 of her will, placed any limitation upon the trust that she had created, but she had expressed, and also thereafter expressed, her intention to favor her granddaughter, the plaintiff, Mrs. Morgan. To uphold the contention of defendants, as made through their able counsel, would at once strike down such intention and purpose so plainly expressed by the testatrix up to the time she commenced to write item 10 of her will, with no apparent cause whatever for such a radical change in her fixed determination, and that, too, in the face of the fact that in subsequent parts

of her will and codicil she expressed the same desire to prefer plaintiff, but which will be defeated and cannot and will not be carried out if the interpretation contended for should be adopted.

But the intention and purpose of the testatrix with reference to the character of estate she desired to confer on Mrs. Morgan in the clauses of her will hereinbefore mentioned, as well as her expressed desire to prefer her, may be upheld, notwithstanding item 10 of the will, or item 5 of the codicil, unless the language of the two latter is irreconcilably in conflict with former provisions. (See authorities, supra.) The immediate task before us, then, is to determine whether that is true, and, when done, it will be decisive of the case, and it is so admitted in the brief of counsel on page 21, wherein it is said: "But for item 10 of the will we would agree readily with counsel that the will is susceptible of his construction. The trouble is, however, that item 10 is in the will and is *in conflict*, insofar as the remainder interest of *Mrs. Morgan* is concerned, with the previous clauses." (Our emphasis.) The court below did not, nor can we, agree with that contention, since we find no conflict between prior items of the will, devising remainder interest to Mrs. Morgan by name, and item 10, either arising from the literal expressions of the latter or from general intendment and purpose to be gathered from the whole will.

Item 10 of the will did place a limitation upon the duration of the trust created by prior clauses, and stated that at the expiration of that time the income from the property theretofore drawn by the life tenant "shall vest in his or her *child* or *children* or their descendants, and the corpus be distributed," etc. (Our emphasis.) Under another rule, not heretofore mentioned but universally prevailing, to the effect that the court may, in order to effectuate the manifest intention of the testator, transpose words and clauses (see Hunt v. Johnson, 10 B. Mon. 342; Cecil case, supra; Buschemeyer v. Klein, 139 Ky. 124, 129 S. W. 551, and 40 Cyc. p. 1399), it is our conclusion that the testatrix meant to say in the first part of item 10 that "the portion of the estate from which said children received income during life shall vest under the provisions of this will in his or her child or children or their descendants," in lieu of the language she did employ, saying: "The portion of the estate from which said children received income during life under the provisions of this will shall vest in his or her child or

children or their descendants." In other words, it is plainly manifest that the clause "under the provisions of this will" was intended to refer to the remainder interest after the life of the particular tenant instead of to the income of the particular tenant, and that, where the testatrix had provided in some of the first nine items of her will for such remainder interest to go to the "child or children" of the first taker, the other provisions of item 10 should apply, but, where the taker of such remainder interest was not designated as "child or children," but by name, as was the case with reference to the property involved in this case, then the provisions of section 10 cutting down or modifying such absolute remainder interest do not apply leaving as the only effect of that item on the remainder interest of plaintiff the limitation upon the duration of the trust created by the testatrix.

To give item 10 that interpretation does no violence to its express language, and it is in perfect accord with the general, predominant, and outstanding purpose and intention of the testatrix with reference to Mrs. Morgan, as gathered from the entire language of the testamentary documents. We therefore see that one of the fundamental essentials for the application of the "Later Clause" rule is wanting in this case, in that the language of item 10 is not even in express conflict with prior items or clauses of Mrs. Callahan's will giving to plaintiff her remainder interests by name, and which are sought to be annulled by this proceeding; much less is it in irreconcilable conflict with such prior devises. However, under the very terms of the rule, if the language of item 10 was in fact apparently and in one view in conflict with such prior clauses, it would not necessarily prevail over them, because the language of both may be reconciled and upheld in a manner to carry out the prevailing intention of the testatrix as gathered from the entire language of her will, and which conclusion inevitably follows from the limitations contained in the "Last Clause" rule contended for, viewed in the light of another one, supra, saying that all the provisions of a will should be upheld and given effect, if possible, so as to carry out the general intent and purpose of the testator, and which all courts follow, unless the later provision is in absolute and irreconcilable conflict with the previous one.

The terms "child" and "children" are generic ones, and usually include all of the class to which they

relate, but such would not be true if the language employed, viewed in the light of that in connection with which it was made, clearly indicates that a specifically named child was intended to be excluded. It will be remembered, as is hereinbefore pointed out, that in some of the first nine items of Mrs. Callahan's will certain property was devised to her daughter, Mrs. Bowman, with remainder to her daughter, Mrs. Morgan, and in others of those items the remainder interest in the property was devised to her daughter or daughters for life, and the remainder interest to her or their "child" or "children," without naming any of them; and, perhaps, in still others, there was no disposition of the remainder interest after the life estate devised to the daughters. Besides providing for the duration of the trust, item 10 of the will by its express terms modified prior provisions of the will where the remainder interest was limited to "child" or "children" of the daughter who was given a particular estate, or where no remainder interest was given, but left untouched the interest of any remainderman by name, (as was done by testatrix with reference to the clauses of her will sought to be annulled by this proceeding), and in which she expressly named plaintiff as the single and sole remainderman, and did not employ an inclusive generic term as "child" or "children." Such interpretation is not only authorized by the limitation contained in the "Last Clause" rule, but to apply it in this case would utterly ignore such limitations, as well as the other imperative rules, supra, for the interpretation of wills.

It is our conclusion that the literal language in item 10 of Mrs. Callahan's will is such as to confine that item to only such remainder interest as was limited to the "child" or "children" of the daughter taking the particular estate. The same reasoning gives the same confining interpretation to clause 5 of the codicil, since it is made to apply only to such remainder interest, after the life estate of Mrs. Bowman, as is devised "to her child," and which we hold does not embrace any remainder interest devised to Mrs. Morgan by name. If item 10 of the will under consideration, immediately following the words "shall vest in his or her child or children," had contained these words, or their substance, *"or any other remainder devisee named in any of the items of my will,"* then the irreconcilable conflict required by the

law to give that item precedence would, perhaps, be present. But, in the absence of the italicized words, or others of like import, it is clearly manifest that the position of learned counsel for defendants cannot be sustained.

Such, we repeat, was the conclusion of the learned trial judge, and, being in accord with our views as herein expressed, his judgment must be, and it is affirmed.